The STATE of Texas

v.

Matthew Wayne KURTZ, Appellee.

No. 1397–03.

Court of Criminal Appeals of Texas.

Oct. 20, 2004.

Rehearing Denied Jan. 12, 2005.

Lloyd D. Odle, Lewisville, for Appellant.

Emily Johnson-Liu, Asst. District Atty., McKinney, Matthew Paul, State's Atty., Austin, for State.

WOMACK, J., delivered the opinion of the Court, in which MEYERS, PRICE, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined.

The question in this appeal is whether an officer of the police department of a city has authority to stop a person for committing a traffic offense when the officer is in another city within the same county. We hold that the officer does not have such authority.

### Facts

On August 12, 2001, Steven Boyd, a police officer of the City of Plano, noticed a vehicle that was going west on a multi-lane, divided highway (State Highway 121). He saw the vehicle cross from the right lane onto the improved shoulder of the highway, where it traveled for several seconds. Then it moved unsteadily, from the shoulder to the right lane and back to the shoulder, several times. When the vehicle ultimately returned to the right lane of the highway, the officer stopped the vehicle and spoke to the driver, Matthew Kurtz. The officer saw and smelled evidence of intoxication, so he arrested the driver for driving while intoxicated. He took Kurtz to the Plano City Jail.

### Procedural History

The Collin County Attorney charged Kurtz with DWI. Kurtz moved to suppress the evidence that the officer had obtained after the stop on the ground that it was obtained by illegal acts.[1]

The trial court concluded, "The only possible offenses Boyd may have initially observed Kurtz commit ... were traffic offenses, i.e., failure to maintain a single lane and driving on the improved shoulder of a highway. TEX. TRANSP. CODE ... §§ 545.060 and ... 545.058."

The court also found that the Plano officer stopped and arrested Kurtz in the City of Frisco.

The City of Plano and the City of Frisco are home-rule cities, each of which is located in both Collin and Denton Counties. Plano is south of Frisco. For a distance of less than a mile, the cities are contiguous. The trial court found that the boundary line of the cities is the center line of the highway on which Kurtz was driving. Although the east-bound lanes of the highway are in Plano, the west-bound lanes of the highway, where Kurtz was driving and where he was stopped, are in Frisco.

The trial court granted the appellee's motion to suppress evidence, and the State appealed. A divided panel of the Fifth Court of Appeals affirmed.[2] We granted review.

### Relevant Statutes

The general authority (and, in some circumstances, the duty) of peace officers to arrest without warrant are set out in Arti-

---

1. See TEX.CODE CRIM. PROC. art. 38.23(a) ("No evidence obtained by an officer or other person in violation of any provision of the Constitution or laws of the State of Texas ... shall be admitted in evidence against the accused on the trial of any criminal case").

2. State v. Kurtz, 111 S.W.3d 315 (2003).

cle 14.03 of the Code of Criminal Procedure. The portions of Article 14.03 that are most relevant to this particular case are:

### 14.03. Authority of Peace Officers

(a) Any peace officer may arrest, without warrant:

(1) persons found in suspicious places and under circumstances which reasonably show that such persons have been guilty of some felony, violation of Title 9, Chapter 42, Penal Code, breach of the peace, or offense under Section 49.02, Penal Code, or threaten, or are about to commit some offense against the laws; .....

. . .

(d) A peace officer who is outside his jurisdiction may arrest, without warrant, a person who commits an offense within the officer's presence or view, if the offense is a felony, a violation of Chapter 42 or 49, Penal Code, or a breach of the peace. A peace officer making an arrest under this subsection shall, as soon as practicable after making the arrest, notify a law enforcement agency having jurisdiction where the arrest was made. The law enforcement agency shall then take custody of the person committing the offense and take the person before a magistrate in compliance with Article 14.06 of this code.

. . .

(g) A peace officer listed in Subdivision (1), (2), (3), (4), or (5), Article 2.12, who is licensed under Chapter 415, Government Code, and is outside of the officer's jurisdiction may arrest without a warrant a person who commits any offense within the officer's presence or view, except that an officer who is outside the officer's jurisdiction may arrest a person for a violation of Subtitle C, Title 7, Transportation Code, only if the officer is listed in Subdivision (4), Article 2.12. A peace officer making an arrest under this subsection shall as soon as practicable after making the arrest notify a law enforcement agency having jurisdiction where the arrest was made. The law enforcement agency shall then take custody of the person committing the offense and take the person before a magistrate in compliance with Article 14.06.

These portions of Article 14.03 refer to several other statutes. One is Article 2.12 of the Code of Criminal Procedure which, at the time that Officer Boyd stopped Kurtz, read, in part:

### Art. 2.12. Who Are Peace Officers

The following are peace officers:

(1) sheriffs, their deputies, and those reserve deputies who hold a permanent peace officer license issued under Chapter 415, Government Code; [3]

(2) constables, deputy constables, and those reserve deputy constables who hold a permanent peace officer license issued under Chapter 415, Government Code;

(3) marshals or police officers of an incorporated city, town, or village, and those reserve municipal police officers who hold a permanent peace officer license issued under Chapter 415, Government Code;

(4) rangers and officers commissioned by the Public Safety Commis-

---

**3.** Chapter 415 of the Government Code was repealed when the Occupations Code was enacted. *See* Occupations Code Act of May 28, 1999, 76th Leg., R.S., ch. 388, § 6(b)(1), 1999 Tex. Gen. Laws 1431, 2440. It was replaced by Chapter 1701 of the Occupations Code. According to the caption of the Act, it was "a nonsubstantive revision of statutes." *Id.,* at 1431.

sion and the Director of the Department of Public Safety;

(5) investigators of the district attorneys', criminal district attorneys', and county attorneys' offices;  .....

Another statute to which Article 14.03 refers is Article 14.06 of the Code of Criminal Procedure, which at the time the appellee was stopped, read:

## Art. 14.06. Must take offender before magistrate

(a) Except as provided by Subsection (b), in each case enumerated in this Code, the person making the arrest shall take the person arrested or have him taken without unnecessary delay, but not later than 48 hours after the person is arrested, before the magistrate who may have ordered the arrest, before some magistrate of the county where the arrest was made without an order, or, if necessary to provide more expeditiously to the person arrested the warnings described by Article 15.17 of this Code, before a magistrate in a county bordering the county in which the arrest was made. The magistrate shall immediately perform the duties described in Article 15.17 of this Code.

(b) A peace officer who is charging a person, including a child, with committing an offense that is a Class C misdemeanor, other than an offense under Section 49.02, Penal Code, may, instead of taking the person before a magistrate, issue a citation to the person that contains written notice of the time and place the person must appear before a magistrate, the name and address of the person charged, and the offense charged.[4]

Article 14.03 also refers to "Subtitle C, Title 7, Transportation Code." The subject of Title 7 of the Transportation Code is "Vehicles and Traffic," and the subject of Subtitle C is "Rules of the Road." In Subtitle C are the sections that the trial court cited in its conclusions: Section 545.058 ("Driving on Improved Shoulder")[5] and Section 545.060 ("Driving on Roadway Laned for Traffic").[6]

### Discussion

The authority of a peace officer to arrest without warrant for an offense committed within the officer's presence or view when the officer is outside the officer's jurisdiction was significantly altered in 1995 by the act of the legislature that added Subdivision (g) to Article 14.03 of the Code of Criminal Procedure. The act limited the

4. The Texas Fair Defense Act of June 14, 2001 amended article 14.06(a) to require that the arrested person be taken before the magistrate not later than 48 hours after the arrest, and it permitted the taking to be made by a person who had custody of the arrested person. *See* Acts, 77th Leg., R.S., ch. 906, § 3, 2001 Tex. Gen. Laws 1800, 1801.

5. "(a) An operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only:
(1) to stop, stand, or park;
(2) to accelerate before entering the main traveled lane of traffic;
(3) to decelerate before making a right turn;

(4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn;
(5) to allow another vehicle traveling faster to pass;
(6) as permitted or required by an official traffic-control device; or
(7) to avoid a collision."

6. "(a) An operator on a roadway divided into two or more clearly marked lanes for traffic:
(1) shall drive as nearly as practical entirely within a single lane; and
(2) may not move from the lane unless that movement can be made safely."

authority of peace officers to arrest without warrant in two ways:

(1) The act gave only five categories of peace officers the general authority to arrest without warrant for any offense committed within their presence or view when they were outside their jurisdictions. All other categories of peace officers were not given such extra-territorial authority to arrest without warrant. At this time, there appear to be thirty-three categories of peace officers who are not given such authority to arrest without warrant when they are outside their jurisdictions: three categories of "reserve" officers (reserve deputy sheriffs, reserve deputy constables, and reserve municipal police officers) if they do not hold a permanent peace officers license,[7] and the thirty other categories of peace officers who are listed in Subdivisions (6) through (34) of Article 2.12.[8]

7. *See* TEX.CODE CRIM. PROC. art. 2.12(1)-(3).

8. "(6) law enforcement agents of the Texas Alcoholic Beverage Commission;

"(7) each member of an arson investigating unit commissioned by a city, a county, or the state;

"(8) officers commissioned under Section 37.081, Education Code, or Subchapter E, Chapter 51, Education Code;

"(9) officers commissioned by the General Services Commission;

"(10) law enforcement officers commissioned by the Parks and Wildlife Commission;

"(11) airport police officers commissioned by a city with a population of more than 1.18 million that operates an airport that serves commercial air carriers;

"(12) airport security personnel commissioned as peace officers by the governing body of any political subdivision of this state, other than a city described by Subdivision (11), that operates an airport that serves commercial air carriers;

"(13) municipal park and recreational patrolmen and security officers;

"(14) security officers and investigators commissioned as peace officers by the comptroller;

"(15) officers commissioned by a water control and improvement district under→ Section 49.216, Water Code;

"(16) officers commissioned by a board of trustees under Chapter 54, Transportation Code;

"(17) investigators commissioned by the Texas State Board of Medical Examiners;

"(18) officers commissioned by the board of managers of the Dallas County Hospital District, the Tarrant County Hospital District, or the Bexar County Hospital District under Section 281.057, Health and Safety Code;

"(19) county park rangers commissioned under Subchapter E, Chapter 351, Local Government Code;

"(20) investigators employed by the Texas Racing Commission;

"(21) officers commissioned under Chapter 554, Occupations Code;

"(22) officers commissioned by the governing body of a metropolitan rapid transit authority under Section 451.108, Transportation Code, or by a regional transportation authority under Section 452.110, Transportation Code;

"(23) investigators commissioned by the attorney general under Section 402.009, Government Code;

"(24) security officers and investigators commissioned as peace officers under Chapter 466, Government Code;

"(25) an officer employed by the Texas Department of Health under Section 431.2471, Health and Safety Code;

"(26) officers appointed by an appellate court under Subchapter F, Chapter 53, Government Code;

"(27) officers commissioned by the state fire marshal under Chapter 417, Government Code;

"(28) an investigator commissioned by the commissioner of insurance under Article 1.10D, Insurance Code;

"(29) apprehension specialists commissioned by the Texas Youth Commission as officers under Section 61.0931, Human Resources Code;

"(30) officers appointed by the executive director of the Texas Department of Criminal Justice under Section 493.019, Government Code;

"(31) investigators commissioned by the Commission on Law Enforcement Officer Standards and Education under Section 1701.160, Occupations Code;

(2) From four of the five categories of peace officers who were given general authority to arrest without warrant for offenses committed within their presence or view when they were outside their jurisdictions, the act took away the authority to arrest for the traffic offenses that are violations of the Rules of the Road in the Transportation Code. Only rangers and officers of the Department of Public Safety were given authority to make an extraterritorial arrest without warrant for such offenses.

■ This act was very specific and clear in not giving police officers and marshals of cities, towns, and villages the authority to arrest without warrant for violations of the Rules of the Road that are committed in their presence or view when they are outside their jurisdictions. There is no room in Article 14.03(g) for us to find any authority for Officer Boyd of the Police Department of the City to Plano to arrest without warrant for a violation of the Rules of the Road when he was outside the city.

The State's argument on the issue of the officer's authority to arrest is that our decision in *Angel v. State,* 740 S.W.2d 727 (Tex.Cr.App.1987), "held that a city police officer's jurisdiction is county-wide." [9] The

1995 statute says something quite different, as we have explained.

The State's argument that "if the legislature intended to change *Angel,* it could have done so more closely in time to the *Angel* decision and could have been more explicit" [10] has no merit. The statute could not be more clear: DPS officers have authority to arrest without warrant for violations of the Rules of the Road statutes committed in their presence or view; other peace officers do not when they are outside their jurisdictions. The legislature and the governor said so in 1995. Whatever authority *Angel* may have had at one time, it cannot now give authority to Officer Boyd.

The State also says, "Alternatively, this court should establish that city officers may act as peace officers anywhere in their county when their action preserves the peace in their city." [11] We should do this because "courts, whenever reason and equity demand, have been the primary instruments for changing the common law through a continual re-evaluation of common law concepts in light of current conditions." [12]

But the courts of common law or equity will not extend the city officer's authority

"(32) commission investigators commissioned by the Texas Commission on Private Security under Section 1702.061(f), Occupations Code;

"(33)[ as amended by Act of June 18, 2003, 78th Leg., R.S., ch. 235, § 16, 2003 Tex. Gen. Laws 1063, 1070, and Act of June 20, 2003, 78th Leg., R.S., ch. 930, § 12, 2003 Tex. Gen. Laws 2773, 2777] the fire marshal and any officers, inspectors, or investigators commissioned by an emergency services district under Chapter 775, Health and Safety Code.

"(33)[as amended by Act of June 20, 2003, 78th Leg., R.S., ch. 474, § 1] the fire marshal, and any investigators commissioned by an emergency services district to assist that fire marshal, under Subchapter F, Chapter 775, Health and Safety Code; and

"(34) officers commissioned by the State Board of Dental Examiners under Section 254.013, Occupations Code, subject to the limitations imposed by that section." *Id.,* art. 2.12(6)-(34).

9. Brief, at 6.

10. *Id.,* at 8.

11. *Id.,* at 10.

12. *Ibid.* (quoting *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 899 (Tex.2000) (deciding the meaning of the term "damages")).

to arrest. "Independent of statute, the authority or jurisdiction of the marshal would not extend beyond the city limits."[13] So the Supreme Court said in 1895, when there was certified to it the question, "Can the marshal of a town incorporated under the general laws of this state, by virtue of his office, under the circumstances specified in article 229 of the Code of Criminal Procedure, lawfully arrest one beyond the limits of the town for a felony committed within the county, but not within the town?"[14] And so we believe the law to be today.

The State argues with some force that rapid growth of cities leads to changes in their boundaries, and that cities have an interest in protecting their citizens from dangerous drivers near their boundaries.[15] We also know that the rapid growth of cities has led more of them to expand into multiple counties, and more of them to become contiguous. If this court could and would adopt the rule for which the State argues in this case, that every city police officer may arrest without warrant anywhere in the county in which the city is located, the result would be that the police officers of Plano could arrest without warrant in any city in Collin and Denton Counties, and the police officers of any city in Collin and Denton Counties could arrest without warrant in Plano. In addition to Plano and Frisco, Collin County encompasses all or part of 26 other towns and cities, including Dallas, Richardson, and McKinney.[16] Denton County encompasses 36 other cities, including all or parts of Dallas, Denton, Fort Worth, and Lewisville.[17] Whether all or any of these cities

would welcome warrantless arrests by the police officers of other cities, we do not know. When it comes to arrests without warrant for traffic offenses, the legislature has said that officers may not make them in cities other than their own. We think the courts must accept that decision.

The record discloses interlocal agreements between the cities of Plano and Frisco that show the interest of the City of Plano in controlling traffic by the use of traffic signals, and the interest of the City of Frisco "to promote development by retaining full and sole control over driveway locations on the north side of State Highway 121."[18] The balance of these and other interests against the interest in enforcing the Rules of the Road is for the cities to strike when they draw boundaries and make agreements. It is not for this court.

The State likens this case to our recent decision in *Yeager v. State*,[19] in which we held that officers, who had authority to seize a motorist when he drove erratically in their city, continued to have authority to pursue and seize him outside the city. We rely on the trial court's findings that none of Officer Boyd's observations or actions took place in his city.

The State also invites us to find that the officer had authority "to preserve the peace in his jurisdiction" by stopping Kurtz in the City of Frisco before he veered from the shoulder and the right lane across the other west-bound lanes and across the dividing median into the east-

---

**13.** *Newburn v. Durham,* 88 Tex. 288, 289, 31 S.W. 195, 195 (1895).

**14.** *Id.,* at 288, 31 S.W., at 195.

**15.** Brief, at 12–13.

**16.** Texas Almanac 2004–2005 165.

**17.** *See id.,* at 177.

**18.** *See* State's Exhibit 1.

**19.** 104 S.W.3d 103 (Tex.Cr.App.2003).

bound lanes in the City of Plano.[20] But these are not the facts of the case. We have no occasion today to consider a case in which a city officer sees a person outside the city carrying destruction toward the city limits, and acts to arrest for a breach of the peace.[21] This was a detention for violation of a Rules of the Road statute, which was followed by an arrest for DWI.

The dissenting opinion, *post,* would reverse the judgments of the courts below because Officer Boyd had reasonable suspicion of the appellee's committing the offense of DWI. We believe that the dissenting opinion is not supported by the facts of this case. The trial court concluded that "the only possible offenses" that the officer "may have initially observed were traffic offenses." We read this as a finding that DWI was not a possible offense that Officer Boyd initially observed. Which brings us to the State's remaining argument.

■ The State argues that, whatever Article 14.03 may do to limit Officer Boyd's authority to arrest, "no statute limits the officer's authority to perform an investigative detention."[22] The State has not taken into account the way the term "arrest" is used in enforcement of the Rules of the Road statutes.

Section 543.001 of the Transportation Code provides generally, "Any peace officer may arrest without warrant a person found committing a violation of this subtitle," which is Subtitle C of Title 7—the "Rules of the Road" subtitle. The Code makes it clear that its use of the term "arrest" is not limited to a custodial arrest.

Although the Transportation Code uses the term "arrest" to describe the process by which a person is detained and later released pursuant to a promise to appear, it is clear that this procedure involves what both the courts and common usage refer to as a "traffic stop." If fealty to the statutory language requires that the detention involved be labeled an arrest, it is not the sort of "custodial arrest" that subjects the person to the incidental searches allowed by Fourth Amendment law.[23]

These Transportation Code "arrests" are temporary detentions that may end without further official action, or with the issuance of a written notice to appear[24] (which is the only action authorized when the "arrest" is to charge a Texas resident who is operating a vehicle licensed in Texas with an offense of speeding or a violation of the open container law),[25] or by the custodial arrest that is followed by taking the arrested person before a magistrate.[26]

The same meaning should be given to the term "arrest" when Code of Criminal Procedure Article 14.03(g) says "that an officer who is outside the officer's jurisdiction may arrest a person for a violation of Subtitle C, Title 7, Transportation Code, only if the officer is listed in Subdivision (4), Article 2.12." This clause is closely linked to Subtitle C, and the term "arrest" should have the same meaning in this clause that it has in Subtitle C. We there-

20. Brief, at 11–12.

21. *See* Tex.Code Crim. Proc art. 14.03(d), *supra,* at 4.

22. Brief, at 9.

23. George E. Dix & Robert O. Dawson, 40 Texas Practice—Criminal Practice and Procedure § 10.14 (2d ed.2001) (footnote omitted).

24. *See* Tex. Trans. Code 543.003.

25. *See id.,* § 543.004.

26. *See id.,* § 543.002.

fore reject the State's argument that no statute limited Officer Boyd's traffic stop of Kurtz. This clause of Article 14.03(g) limited it.

Because Officer Boyd was outside his jurisdiction when he arrested Kurtz by temporarily detaining him for violating the Rules of the Road, and he is not an officer who is listed in Subdivision (4) of Article 2.12 of the Code of Criminal Procedure, the arrest was in violation of Article 14.03(g) of the Code. Evidence that was obtained in violation of that article may not be admitted in evidence against the accused in the trial of a criminal case,[27] and the courts below were correct to say that it must be excluded.

The judgment of the court of appeals is affirmed.

HOLCOMB, J., filed a dissenting opinion, in which KELLER, P.J., joined.

HOLCOMB, J., dissenting, in which KELLER, P.J., joined.

I respectfully dissent. I have no argument with the majority's holding that an officer outside his jurisdiction cannot arrest for mere traffic offenses. But the majority's holding today means that an officer outside his jurisdiction cannot stop and detain a person when the officer witnesses traffic offenses which in themselves also give rise to reasonable suspicion that a felony, a violation of Chapter 42 or 49 of the Penal Code, or a breach of the peace is taking place.[1] This is contrary to the stat-

ute and well-settled state and federal jurisprudence; therefore, I dissent.

The reasons I must dissent are threefold: (1) the trial court abused its discretion because its conclusions of law are erroneous; (2) the State was justified when it argued article 14.03(g) does not prohibit any peace officer from conducting an investigative detention outside his jurisdiction when traffic offenses committed in his view supply reasonable suspicion that a breach of the peace or an intoxication offense is afoot;[2] and (3) the Legislative history of the statute belies a construction that would prohibit extra-jurisdictional stops anywhere in the state, except when an arrest is made for traffic offenses.

## I. The trial court's conclusions of law are erroneous

I take issue with the following excerpt of the trial court's conclusions of law:

"Boyd admitted he found probable cause for the DWI arrest only after completing the field-sobriety tests, which means he did not observe a DWI offense before then; he observed *only events which might cause a reasonable suspicion of DWI.* The only possible offenses Boyd may have initially observed Kurtz commit outside the Plano city limits were traffic offenses, i.e., failure to maintain a single lane and driving on the improved shoulder of a highway. Under article 14.03(g), Boyd could not legally stop Kurtz for these violations, unless some

27. *See* Tex.Code Crim. Proc. art. 38.23(a).

1. Tex.Code Crim. Proc. Ann. art. 14.03(d),(g) (Vernon Supp.2004).

2. Subsection (g) clearly authorizes extra-territorial stops based on offenses against the Penal Code. The statute provides, in pertinent part, as follows:
   "A peace officer ... who is licensed under the Government Code, *and is outside of [his]*

*jurisdiction may arrest without a warrant a person who commits any offense within the officer's presence or view,* except that an officer outside the officer's jurisdiction may arrest a person for a violation of [the Transportation Code] only if [he is a Ranger or an officer with the TDPS]." Tex.Code Crim. Proc. Ann. art 14.03(g)(emphasis added).

other provision of the law applied." (emphasis added).

Based upon this reasoning, the trial court abused its discretion in suppressing the evidence because it clearly misstates the law.

An abuse of discretion with respect to factual matters occurs if the record establishes the trial court could reasonably have reached only one decision and it failed to do so.[3] As to the determination of controlling legal principles, an abuse of discretion occurs if the trial court clearly fails to analyze or apply the law correctly.[4] A trial court has no discretion in determining what the law is or applying the law to the facts.[5] Thus, a failure by a trial court to analyze or apply the law correctly will constitute an abuse of discretion.[6]

At the suppression hearing, Officer Boyd testified as follows:

> Officer Boyd: My first observation of Mr. Kurtz's vehicle was traveling west or southbound on State Highway 121. I observed the vehicle cross from the right-hand lane onto the improved shoulder of westbound 121 and travel on the improved shoulder for several seconds. I then observed the vehicle cross back over on to the right-hand lane on several occasions and ultimately correct itself back into the right-hand lane where I made a traffic stop.

\* \* \* \* \* \* \*

The State: And you first observed Mr. Kurtz move from his lane of traffic to the improved shoulder?

Officer Boyd: He moved from the far right-hand lane onto the right-hand improved shoulder of 121.

The State: Can you describe the location of his car with respect to the lane of travel?

Officer Boyd: Initially, it was in the far right-hand lane ... The shoulder is paved with a solid white line separating the shoulder itself from the right-hand lane of traffic.

The State: Did his vehicle drift completely onto the shoulder?

Officer Boyd: The vehicle traveled from the right-hand lane completely onto the improved shoulder and traveled in the improved shoulder for several seconds.

The State: When you say several seconds, do you have any more clear idea of how long that was?

Officer Boyd: Between three to five seconds, I would say.

The State: And after you observed the vehicle travel on the improved shoulder for three to five seconds, what did you next observe?

Officer Boyd: I observed the vehicle cross back over into the right-hand lane on several occasions as if the driver was actually traveling in the shoulder and then drifting into the right-hand lane.

---

**3.** *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 918 (Tex.1985). If a trial court's findings are supported by the record, an appellate court is not at liberty to disturb them. *Etheridge v. State,* 903 S.W.2d 1, 15 (Tex. Crim.App.1994). However, the trial court here makes no findings relating to the observations of appellant's driving, but simply re-

cites the facts in the court's conclusions of law.

**4.** *State v. Ballard,* 987 S.W.2d 889, 891 (Tex. Crim.App.1999)

**5.** *Id.*

**6.** *Id.*

The State: Were those maneuvers unsafe?

Officer Boyd: In my opinion they were, yes.

The State: Were there any other vehicles on the road at that time?

Officer Boyd: ... There was one vehicle that was parked to the right of the improved shoulder facing west off to the side of westbound 121.

The State: There was a vehicle parked on the shoulder?

Officer Boyd: It was actually just off the improved shoulder I believe.

The State: ... Did you observe Mr. Kurtz's vehicle come close to the vicinity of that vehicle?

Officer Boyd: Fairly close, yes, ma'am.

The State: Was his driving pattern in a normal fashion?

Officer Boyd: No, it was not.

The State: Would you consider it erratic?

Officer Boyd: I would.

[Objection as to leading sustained by the trial court]

The State: How would you describe his driving behavior?

Officer Boyd: Unsteady. I would consider it unsafe.

The State: And for what reasons?

Officer Boyd: He was driving on an area of the roadway that was not intended for vehicular travel. His vehicle did not maintain a single lane in a steady fashion. He also appeared to cross over from a traveling lane of traffic onto the improved shoulder as if he wasn't able to keep his vehicle in a single lane.

The State: How many times in total did you see him cross the line into another lane of traffic?

Officer Boyd: The report indicates several. I'm not sure exactly how many.

The State: So several would be more than once?

Officer Boyd: Most definitely. I would say more than twice.

The State: After you observed this behavior, what did you do?

Officer Boyd: I initiated a traffic stop ...

The State: And on what basis did you initiate the stop?

Officer Boyd: On the basis of driving on improved shoulder of State Highway 121.

The State: Did you make contact with Mr. Kurtz?

Officer Boyd: Yes, I did.

The State: And did you observe anything upon making contact with him?

Officer Boyd: I noticed a strong odor of an alcoholic beverage coming from his person immediately. I had brief contact with him while he was seated in the vehicle. I noticed that his speech was slurred, heavy tongue.

Officer Boyd further testified he conducted some field sobriety tests and then arrested appellant for driving while intoxicated. On cross examination, defense counsel elicited the following testimony, in pertinent part:

Defense counsel: Does your report reflect that prior to the stop you suspected driving while intoxicated?

Officer Boyd: No, sir.

Defense counsel: Had you seen Mr. Kurtz earlier that day?

Officer Boyd: No, sir.

Defense counsel: Had you smelled his breath [prior to the stop]?

Officer Boyd: No, sir.

Defense counsel: Had you given him any field sobriety tests or seen him

walk or turn or do anything to give you any indicia of intoxication?

Officer Boyd: Not prior to the stop, no, sir.

Defense counsel: So it was only the driving across the line and nothing else that you had of anything that might cause you to suspect that; is that correct?

Officer Boyd: That's correct.

The totality of this testimony authorized a *Terry*[7] stop, regardless of the exception in article 14.03(g), which as explained below, does not apply to offenses against the Penal Code.[8] Yet, the trial court concluded: "[Officer Boyd] observed only events which might cause a reasonable suspicion of DWI." It is well-settled that an officer may stop a motorist when the officer has reasonable suspicion of DWI based on traffic offenses.[9] And, when the trial court concluded "[t]he only possible offenses Boyd may have initially observed Kurtz commit outside the Plano city limits were traffic offenses," it erred in applying only Subsection (g) because it overlooked Subsection (d), which, in my view, ultimately

controls.[10] That is, the very offenses witnessed by Officer Boyd were enough to create reasonable suspicion that appellant was driving while intoxicated.[11] I am further puzzled by the following conclusion: "Under article 14.03(g), Boyd could not legally stop Kurtz for these violations, *unless some other provision of the law applied.*" To its credit, the trial court got the emphasized portion correct, but failed to carry out an application of Subsection (d), which clearly authorizes an investigative detention.

Thus, in my view, the ultimate issue in this case is whether the trial court abused its discretion in concluding that Officer Boyd could not effect a *Terry* stop outside his jurisdiction under Subsection (d) due to the provisions of Subsection (g). It is clear to me that the exception in Subsection (g) would only come into play if Officer Boyd had arrested appellant for the traffic offenses. Appellant was not arrested for mere traffic offenses; he was arrested for driving while intoxicated; therefore, the stop was proper under *Terry* and

**7.** *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**8.** Tex.Code Crim. Proc. Ann. art 14.03(g); *United States v. Arvizu,* 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002); *Balentine v. State,* 71 S.W.3d 763, 768 (Tex.Crim.App. 2002).

**9.** *Fatemi v. State,* 558 S.W.2d 463, 466 (Tex. Crim.App.1977) (finding no specific, articulable facts to justify detention); *see e.g., Klare v. State,* 76 S.W.3d 68, 75 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd) (citing various factual circumstances that support or fail to create reasonable suspicion of DWI under the totality of the circumstances).

**10.** If Officer Boyd had failed to find probable cause appellant was driving while intoxicated after the initial stop, but arrested appellant for only the traffic violations, then, Officer Boyd would have run afoul of Subsection (g).

But that did not happen. Rather, there was reasonable suspicion of DWI based on the traffic offenses; probable cause was developed after smelling the alcohol and conducting the field sobriety tests; and an arrest was made for DWI—not traffic offenses. Nothing here offends the law.

**11.** It is important to note here that there is no indication in the record that the trial court, in its discretion as the finder of fact, disbelieved Officer Boyd's testimony about what he witnessed appellant do. On the contrary, the trial court's conclusions of law indicate that the officer's credibility was not in question, and that the trial court accepted as true the events to which Officer Boyd testified. Therefore, our review is de novo. *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997); *Brother v. State,* 85 S.W.3d 377 (Tex.App.-Fort Worth 2002, pet. granted) (citing *Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App. 2000)).

Subsections (d) and (g). So, not only did the trial court fail to apply long-standing principles of law by incorrectly concluding that Subsection (g) prevents a *Terry* stop for DWI based on erratic driving, the trial court clearly erred when it suppressed the evidence after determining that, "he observed *only* events which might cause a reasonable suspicion of a DWI." As set forth *infra*, ¶ II, the law has long authorized *Terry* stops for DWI based upon traffic offenses and the officer's community caretaking function.[12]

Additionally, the trial court was incorrect in concluding that "Boyd admitted he found probable cause for the DWI arrest only after completing the field sobriety tests, which means he did not observe a DWI offense before then...." I find this conclusion erroneous for three reasons.

First, a trial court is not confined by the conclusions of a witness. The finder of fact *may* defer to the conclusions of a fact witness, but suppression law is not bound by the "admissions" of fact witnesses.[13] We have held that the subjective intent of the officer conducting the stop is irrelevant.[14] Further, an objectively valid stop may be upheld even if made for an improper reason.[15] A court's review is not limited to the violations an officer lists in making the stop; the test is whether the articulat-

ed facts about which the officer testified would, in light of the officer's experience and personal knowledge, together with inferences from those facts, warrant a reasonable person to believe that a violation had occurred.[16] Thus, as a basis for the trial court's conclusion that the extraterritorial stop was improper, Officer Boyd's "admission" was not controlling.[17]

Second, I do not understand what the trial court means by "he did not observe a DWI offense before then ..." There is no set category of facts which give rise to a reasonable suspicion of DWI.[18] Subsection (g) only limits arrests for traffic violations. If construed otherwise, Subsection (d) and the clear authority under Subsection (g) to make extra-territorial stops for offenses under the Penal Code, would be rendered meaningless. Specifically, if an officer were not allowed to effect a stop to investigate an offense under Subsection (d) simply because the reasonable suspicion was based on witnessing various traffic offenses, it would undermine well-established law and subvert the purposes and intent of Subsection (d). For example, violations of Chapter 49 are almost always evidenced by traffic offenses, such as failure to maintain a lane or failure to stop at a traffic light.[19] Under certain circum-

12. *See Wright v. State*, 7 S.W.3d 148, 152 (Tex.Crim.App.1999); *Terry*, 392 U.S. at 29, 88 S.Ct. 1868 ("The sole justification of the search ... is the protection of the police officer and others nearby...."); *Townsend v. State*, 813 S.W.2d 181, 185 (Tex.App.-Houston [14th Dist.] 1991, pet. ref'd) (weaving back and forth across three lanes at 2 a.m. is sufficient to raise a reasonable suspicion of driving while intoxicated).

13. *Terry v. Ohio*, 392 U.S. at 21–22, 88 S.Ct. 1868 (applying an objective test).

14. *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim.App.2001).

15. *Walter v. State*, 28 S.W.3d 538, 543 (Tex. Crim.App.2000).

16. *Garcia*, 43 S.W.3d at 530; *Davis v. State*, 947 S.W.2d 240, 242–43 (Tex.Crim.App. 1997).

17. *See Garcia*, 43 S.W.3d at 530.

18. *Klare v. State*, 76 S.W.3d at 72–77.

19. *See Stone v. State*, 703 S.W.2d 652, 654 (Tex.Crim.App.1986); *Cook v. State*, 63 S.W.3d 924, 928–29 (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd) (finding weaving on the road at 2:30 a.m. objectively reasonable to stop and detain for DWI); *Townsend v. State*,

stances then, simple traffic violations may, in and of themselves, authorize an investigative detention outside one's jurisdiction.[20] The statute does not prohibit a stop supported by reasonable suspicion that any felony or other violation listed under 14.03(d) is taking place simply because a city officer, outside his jurisdiction, witnesses only traffic offenses. Therefore, the exception in Subsection (g) does not mean that an officer has to actually witness a person drink excessively, climb behind a wheel, and drive. On the contrary, there are many acts that fall short of this example which provide reasonable suspicion that a person is driving drunk.

Third, finding probable cause after an initial stop does not run afoul of the law—in fact, long-standing precedent clearly authorizes it.[21] The reasonable suspicion required to detain is a much lower standard than what is required for probable cause to arrest.[22] Thus, whether Officer Boyd had probable cause to stop appellant was irrelevant, because Boyd did not need probable cause to do so; rather, he needed only a reasonable suspicion based upon articulable facts. So, as in the usual DWI case, probable cause to arrest was not established until after an investigatory deten-

tion when Officer Boyd conducted field sobriety tests and smelled the odor of alcohol.[23]

Considering the unimpugned testimony of Officer Boyd, I would conclude that the trial court abused its discretion because it could reasonably have reached only one decision—that the acts witnessed by Officer Boyd supplied reasonable suspicion to effect a *Terry* stop for DWI under both Subsections (d) and (g). Appellant was driving erratically during the early hours of the morning.[24] Therefore, I would find that the trial court abused its discretion because such facts point to only one decision: that the actions of appellant gave rise to a reasonable suspicion that criminal activity—other than mere traffic violations-was afoot.

## II. *Article 14.03(g) does not prevent an extraterritorial stop based on reasonable suspicion of crimes against the Penal Code and those listed in article 14.03(d)*

As explained above, the trial court misconstrued the law: Officer Boyd was not bound by the exception in Subsection (g) because he did not arrest appellant just for traffic violations. Officer Boyd lawfully

813 S.W.2d at 185; *Gajewski v. State,* 944 S.W.2d 450, 452 (Tex.App.-Houston [14th Dist.] 1997, no pet.); *Fox v. State,* 900 S.W.2d 345, 347 (Tex.App.-Fort Worth 1995, pet. improv. granted) (reasonable suspicion existed when officer observed defendant weaving back and forth within his lane); *Raffaelli v. State,* 881 S.W.2d 714, 716 (Tex.App.-Texarkana 1994, pet. ref'd); *Barraza v. State,* 733 S.W.2d 379, 380 (Tex.App.-Corpus Christi 1987) (reasonable suspicion existed when officer observed defendant weaving within his own lane and making two improper turns), *aff'd,* 790 S.W.2d 654 (Tex.Crim.App.1990); *Miffleton v. State,* 728 S.W.2d 880, 883 (Tex. App.-Austin 1987) (reasonable suspicion existed based on defendant's rapid acceleration, weaving and excessive speed), *aff'd,* 777 S.W.2d 76 (Tex.Crim.App.1989).

**20.** *See Viveros v. State,* 828 S.W.2d 2, 4 (Tex. Crim.App.1992).

**21.** *Woods v. State,* 956 S.W.2d 33, 35 (Tex. Crim.App.1997); *Stone v. State,* 703 S.W.2d at 654 (reasonable suspicion to stop based on weaving; probable cause to arrest based on field sobriety tests, the smell of alcohol, and other facts.).

**22.** *Arvizu,* 534 U.S. at 273, 122 S.Ct. 744; *Johnson v. State,* 658 S.W.2d 623 (Tex.Crim. App.1983); *Williams v. State,* 621 S.W.2d 609 (Tex.Crim.App.1981).

**23.** *See Stone v. State,* 703 S.W.2d at 654–55.

**24.** *Klare v. State,* 76 S.W.3d at 73–74.

stopped appellant based on reasonable suspicion of DWI, and upon further investigation, found probable cause to arrest for DWI.[25] Officer Boyd's actions did not run afoul of the statute or case law.[26] Again, Subsection (g) authorizes a peace officer outside his jurisdiction to make a warrantless arrest when a person commits any offense within the officer's presence or view, except for traffic offenses. TEX.CODE CRIM. PROC. ANN. art 14.03(g). To hold otherwise would undermine the plain meaning of the statute and well-seasoned principals of state and federal law.[27]

A police officer may stop and briefly detain an individual for investigative purposes on less information than would be required to support a probable cause determination.[28] Indeed, circumstances short of probable cause for an arrest may justify temporary detention for the purpose of investigation because an investigation is considered to be a lesser intrusion upon the personal security of the individual.[29] The authority to detain a citizen based on reasonable suspicion is a judicial doctrine grafted onto the statutory authority to arrest for probable cause.[30] That is, an investigative detention is widely accepted as part of the authority to arrest.[31] To justify such a stop, the officer must have observed specific, objective, articulable facts which, in light of the officer's experience and personal knowledge, together with inferences from those facts, would warrant a reasonable person to believe that a criminal violation had occurred.[32] Reasonable suspicion requires that there is something out of the ordinary occurring and some indication that the unusual activity is related to crime.[33]

Most importantly, it is not necessary that the conduct violate a particular statute in order to give rise to reasonable suspicion.[34] That is, an activity observed by an officer need not be a crime in itself to justify an investigative detention; it need only be sufficient to create a reasonable suspicion that some activity out of the ordinary was occurring or had occurred, that the defendant had a connection to this activity, and that the activity was related to a crime.[35] Therefore, even though the

---

25. *Berkemer v. McCarty*, 468 U.S. 420, 437–40, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *Yeager v. State*, 104 S.W.3d 103, 107 (Tex. Crim.App.2003).

26. *Terry v. Ohio*, 392 U.S. at 10, 88 S.Ct. 1868; *Guzman*, 955 S.W.2d at 90.

27. *See id.* We have held that, for purposes of warrantless arrests, Texas constitutional law does not afford more protection than federal law. *Rhodes v. State*, 945 S.W.2d 115, 117 (Tex.Crim.App.1997).

28. *Terry v. Ohio*, 392 U.S. at 10, 88 S.Ct. 1868; *Guzman*, 955 S.W.2d at 90.

29. *Leighton v. State*, 544 S.W.2d 394 (Tex. Crim.App.1976).

30. *See Johnson v. State*, 912 S.W.2d 227, 235 (Tex.Crim.App.1995).

31. *See id.*

32. *See Davis v. State*, 947 S.W.2d at 242–43; *Valencia v. State*, 820 S.W.2d 397, 400 (Tex. App.-Houston [14th Dist.] 1991, pet. ref'd).

33. *Davis*, 947 S.W.2d at 244.

34. *Terry*, 392 U.S. at 22–23, 88 S.Ct. 1868; *Gajewski v. State*, 944 S.W.2d at 452.

35. *See Martinez v. State*, 29 S.W.3d 609, 611–12 (Tex.App.-Houston [1st Dist.] 2000, pet. ref'd) (reasonable to stop driver on freeway when driver swerved briefly onto shoulder of road and back in moderate to heavy traffic even though officer believed offense was failing to maintain a single marked lane rather than driving on shoulder); *Held v. State*, 948 S.W.2d 45, 51 (Tex. App.-Houston [14th Dist.] 1997, pet. ref'd) (weaving across several lanes sufficient to give rise to reasonable suspicion that driver intoxicated; irrelevant whether weaving itself is or is not criminal event); *Raffaelli v. State*, 881 S.W.2d at 716 (weaving

conduct witnessed by Officer Boyd were but mere traffic violations, they were sufficient to support reasonable suspicion of driving while intoxicated.[36] It should not matter what appellant did, whether he violated a traffic law or whether he did some other act in Officer Boyd's view, as long as the conduct supported a reasonable suspicion that appellant was driving while intoxicated.[37] The majority incorrectly focuses on violations of the traffic laws to conclude the extra-territorial stop was improper. But because appellant need not have violated *any* law to support reasonable suspicion, the majority's logic is unsound. Namely, why should the violation of traffic laws, as a basis for reasonable suspicion of DWI, trigger the exception in Subsection (g), when some other suspicious behavior that is not a violation of any law, authorize an extra-jurisdictional arrest under Subsection (d)? The stop was proper only because the conduct was sufficient to warrant a reasonable person to believe that appellant was driving drunk.[38] As such, the exception in Subsection (g) does not effect the outcome of this case, and the majority's relegation to it is improper.

I would conclude that Officer Boyd's action was objectively reasonable to stop appellant based on the "specific and articulable facts which, taken together with rational inferences from those facts, warrant-ed"[39] reasonable suspicion of DWI, not that an officer outside his jurisdiction cannot develop reasonable suspicion for DWI upon witnessing traffic offenses.[40] "It would have been poor police work indeed" for Officer Boyd "to have failed to investigate this behavior further" and allow appellant to drive on into the night simply because Subsection (g) prevents arrests for *traffic offenses* outside an officer's jurisdiction.[41] In sum, the exception in Subsection (g) does not disturb the boundaries of *Terry* and corresponding state law when considering offenses against the Penal Code. Thus, *Terry* and its progeny should prevail and remain an empirical question for the finder of fact when evaluating the testimony of officers patrolling outside their jurisdictions.[42]

### III. *The Legislative Intent of the Statute Does Not Support the Majority's Conclusion*

Considering the foregoing conclusions in the backdrop of Subsection (d), *Terry*, and its progeny, it is easy to see that the trial court's conclusions are illogical, misstate the law, and moreover, run counter to the Legislative intent of article 14.03(d).

I am persuaded by Justice Fitzgerald's dissent, which concludes the Legislature intended to broaden rather than restrict a

within lane and speeding after exiting sufficient for reasonable suspicion to stop vehicle).

**36.** *See Terry*, 392 U.S. at 5, 88 S.Ct. 1868 (question of case is whether police may investigate *suspicious circumstances* ) (emphasis added).

**37.** *Terry*, 392 U.S. at 22–23, 88 S.Ct. 1868 (noting that Terry and his cohorts did not violate any laws, but their actions, taken together, warranted further investigation).

**38.** *See Davis v. State*, 947 S.W.2d at 242–43; *Cook v. State*, 63 S.W.3d at 929.

**39.** *Terry*, 392 U.S. at 21–22, 88 S.Ct. 1868.

**40.** *See* Tex.Code Crim. Proc. Ann. art. 14.03(g).

**41.** *Terry*, 392 U.S. at 23, 88 S.Ct. 1868. The Fourth Amendment does not require police officers "to simply shrug [their] shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams*, 407 U.S. 143, 145, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Cook v. State*, 63 S.W.3d at 929.

**42.** *See Terry*, 392 U.S. at 29, 88 S.Ct. 1868 (Fourth Amendment limitations will be developed in the concrete factual circumstances of the individual case).

peace officer's power to arrest outside his or her jurisdiction, unless of course, the arrest is for traffic violations.[43]  Accordingly, I would go one step further and conclude that the Legislative intent of the statute supports a construction that *any* peace officer *anywhere* in the state could have made this stop.  Therefore, whether a municipality is either type-A or type-B is irrelevant.  And, it is my belief that the Legislature passed Subsection (d) for just that reason—to afford more protection to citizens across the state regardless of what type municipality they reside in by allowing an officer outside his jurisdiction to arrest for anything under Subsection (d), but expressly excluding petty traffic offenses as intended by Subsection (g).  In short, the majority's holding here subverts the plain meaning of the statute and would lead to absurd results that the Legislature could not have possibly intended.[44]

### *Conclusion*

Based on the reasoning set forth herein, I would reverse the court of appeals and remand the cause for trial on the merits.

---

**43.**  *State v. Kurtz,* 111 S.W.3d 315, 323–24 (Tex.App.-Dallas 2003).

**44.**  *See Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Crim.App.1991).