Opinion issued May 17, 2007







 






In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00299-CR






ERNESTO ESCAMILLA, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 338th District Court 

Harris County, Texas

Trial Court Cause No. 1033977






MEMORANDUM OPINION


 After the trial court denied his motion to suppress, appellant pleaded guilty to
second-degree felony possession of cocaine. (1) Pursuant to the plea agreement, the trial
court sentenced appellant to eight years in prison. 

 In one issue, appellant challenges the trial court's denial of his motion to
suppress. To resolve this issue, we determine whether the trial court abused its
discretion by refusing to suppress evidence obtained as a result of an out-of-jurisdiction stop conducted in the City of Houston by City of Pasadena police
officers. 

 We affirm.

Background


 At the motion to suppress hearing, the State called three City of Pasadena
police officers: Detective R. Anderson, Detective M. Biggs, and Officer R. Garvey. 
From the testimony of these officers, the trial court heard the following description
of the events surrounding the stop of appellant's vehicle.

 Officer Garvey, who worked for the City of Pasadena police department's
Gang Task Force and investigated narcotics activities, received an anonymous tip that
someone named "Ernesto," whom the tipster described as "a small time drug dealer,"
kept cocaine in a black box in Ernesto's black Lexus. The tipster told Officer Garvey
that Ernesto could be found at a residence located at 910 Aarons in the City of
Houston. The tipster also stated that Ernesto was known to carry a gun and would
soon be leaving the residence. 

 Officer Garvey relayed the information to City of Pasadena undercover officers
Detectives Anderson and Biggs. The two detectives, each in his own vehicle, left
Pasadena and headed to the address given by the tipster to set up surveillance. The
dectectives saw that a black Lexus, as identified by the anonymous tipster, was
parked in the driveway at 910 Aarons. Shortly after they set up surveillance, the
officers observed appellant and another Hispanic male get into the black Lexus. For
approximately 15 minutes, Detectives Anderson and Biggs each followed the Lexus
in his own unmarked vehicle as appellant drove around the neighborhood. During
this time, the detectives observed the Lexus make a couple of stops in the
neighborhood and saw, at one point, "a couple of subjects" approach the Lexus. 

 The detectives then followed the Lexus back to 910 Aarons. Appellant parked
the Lexus in the driveway of the residence for only 30 or 45 seconds and pulled away
again. Appellant then pulled the Lexus behind Detective Biggs and shone the
Lexus's high beam headlights into Detective Biggs's vehicle. Appellant then pulled
the Lexus up to Detective Anderson's vehicle and shone his high beams into that
vehicle. At that point, appellant sped off at a high rate of speed through the
neighborhood. Officer Biggs estimated that the Lexus was traveling in excess of 50
or 60 miles an hour. The officers decided to pursue the Lexus because they believed
that the occupants of the vehicle knew that they had been under surveillance and
because the activity that they had earlier witnessed--the Lexus driving around the
neighborhood and making contact with pedestrians--was consistent with narcotics
trafficking. The detectives were not able to keep up with the Lexus as it sped through
the neighborhood. 

 Officer Garvey had been parked 10 or 12 blocks away monitoring the activities
on his radio in a marked patrol car. Detective Anderson contacted Officer Garvey to
assist in stopping the Lexus. Officer Garvey pursued the Lexus with his emergency
lights and siren activated. The Lexus, which he estimated was traveling between 75
and 80 miles an hour on a road with a 40 miles-per-hour speed limit, pulled over after
a brief pursuit. 

 Officer Garvey approached the vehicle and asked appellant, who was driving,
for identification. When appellant opened the center console to retrieve his
identification, Officer Garvey saw a gun in plain view. Appellant told the officer that
the gun belonged to him and that he did not have a permit for it. Appellant stated that
the Lexus belonged to him and consented to a search of the vehicle. The officers
searched the Lexus, recovering 0.2 grams of cocaine from the center console and an
additional 17.5 grams of cocaine from a locked black box in the trunk. The officers
also recovered a roll of approximately $1,300 in cash. Appellant was charged with
possession of cocaine with the intent to deliver. 

 Appellant filed a motion seeking to suppress the evidence recovered as a result
of the traffic stop. Appellant contended that Officer Garvey was without legal
authority to stop him for a traffic offense in the City of Houston. Appellant also
asserted that the stop was unlawful because the evidence presented at the suppression
hearing did not establish that the officers had a reasonable suspicion that appellant
was engaged in illegal drug activities. 

 The parties entered into a plea agreement in which the State agreed to reduce
the charged offense to second-degree felony possession of cocaine, and appellant
agreed to plead guilty. Based on the State's punishment recommendation, the trial
court sentenced appellant to eight years in prison.

 On appeal, appellant brings one issue challenging the trial court's denial of his
motion to suppress. 

Motion to Suppress


A. Standard and Scope of review

 We review a trial court's ruling on a motion to suppress for an abuse of
discretion. Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). Thus, we
may reverse the trial court's denial of a motion to suppress only if the lower court
abused its discretion in denying the motion. Taylor v. State, 152 S.W.3d. 749, 751
(Tex. App.--Houston [1st Dist.] 2004, pet. ref'd). 

 At a suppression hearing, the trial court is the sole fact-finder and may choose
to believe or disbelieve any or all of the witnesses' testimony. State v. Ross, 32
S.W.3d 853, 855 (Tex. Crim. App. 2000). On appeal, we give almost total deference
to the trial court's determination of historical facts when supported by the record,
particularly if the findings turn on witness credibility and demeanor. Id. at 856;
Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We give the same
deference to determinations of mixed questions of law and fact if their resolution
depends upon witness credibility and demeanor. Ross, 32 S.W.3d at 856. In contrast,
we review issues that present purely legal questions pursuant to a de novo standard. 
Id. We must view the record and all reasonable inferences therefrom in the light most
favorable to the ruling on the suppression motion, and sustain the ruling if it is
reasonably supported by the record and is correct under any theory of law applicable
to the case. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Taylor,
152 S.W.3d. at 752. 

B. Statutory Authority of Pasadena Officer to Make Stop

 It is undisputed that all of the events leading up to the stop of appellant's
vehicle and the stop itself occurred within the City of Houston. It is also undisputed
that Officer Garvey, Detective Anderson, and Detective Biggs are City of Pasadena
police officers. Appellant contends that the trial court should have granted his motion
to suppress because Officer Garvey did not have statutory authority to stop him. 

 Two subdivisions of Code of Criminal Procedure article 14.03 potentially
govern. Subdivision (d) provides, inter alia, that a peace officer who is outside his
jurisdiction may arrest, without warrant, a person who commits a felony within the
officer's presence or view. (2)
 Tex. Code Crim. Proc. Ann. art. 14.03(d) (Vernon
Supp. 2006). Subdivision (g), as it existed at the time of the stop in July 2005,
provided, inter alia, that "[a] peace officer . . . outside of the officer's jurisdiction
may arrest without a warrant a person who commits any offense within the officer's
presence or view, except that an officer outside the officer's jurisdiction may arrest
a person for a violation of [the Transportation Code] only if [he is a Ranger or a DPS
officer]." Act of May 28, 1995, 74th Leg., R.S., ch. 829, § 1, 1995 Tex. Gen. Laws
4213, 4213-14 (amended 2005) (emphasis added) (current version at Tex. Code
Crim. Proc. Ann. art. 14.03(g) (Vernon Supp. 2006)). Thus, at the time of
appellant's stop, city police officers, such as Officer Garvey, were not allowed to stop
and arrest persons for traffic violations committed outside the officer's geographical
jurisdiction. See id.; State v. Kurtz, 152 S.W.3d 72, 77 (Tex. Crim. App. 2004). 
However, under either subsection (d) or (g), a police officer outside his jurisdiction
was allowed to stop a person whom the officer believed to be in possession of a
illegal narcotic, such as cocaine. (3)
 

 Here, appellant contends that Officer Garvey did not have authority to stop him
because the stop was predicated on the traffic offense of speeding. Contrary to
appellant's contention, the record, when viewed in the light most favorable to the
ruling on the suppression motion, supports an implicit finding by the trial court that
Officer Garvey stopped appellant because he suspected appellant was engaged in
illegal narcotics activities. 

 Although Officer Garvey testified on cross-examination that he stopped
appellant because appellant was speeding, it is clear from the entirety of Officer
Garvey's testimony and from the context in which the officer's testimony was given,
that he did not stop appellant because he believed that appellant had committed the
traffic offense of speeding. Rather, appellant's speeding was but an indicator leading
Officer Garvey to suspect appellant was engaged in illegal drug activities. That is,
the record shows that Officer Garvey initiated the stop because a combination of
factors, including speeding, led him to believe that appellant had illegal drugs in his
car.

 On re-direct examination, the prosecutor asked Officer Garvey whether there
were other "considerations" for the stop besides speeding. Officer Garvey answered,
"Yes, the tip about the narcotics, possibly carrying a weapon, the fact that he's
running from surveillance officers, all that has to come into play, yes." This
testimony was consistent with Officer Garvey's testimony earlier in the hearing that
he stopped appellant "[f]or speeding, speeding and based on the tip we had received. 
The fact he was running from us. First, the surveillance officers and then from me,
fleeing, a combination of the tip and everything."

 The record also reflects that Detective Anderson radioed Officer Garvey to
assist in the stop. (4) Regarding the stop, Officer Anderson testified as follows:

 [Appellant] was stopped because of the information that was received
from the anonymous tip as well as the actions that we observed him to
be doing within the neighborhood that are consistent with narcotics
dealing, stopping, meeting up with subjects, and then once we believed
that he had made the surveillance, he knew that we were watching him,
then he tried to evade both the surveillance units and the police units, at
which time the combination of those things established a stop, us
stopping the vehicle.


 In sum, the record supports an implicit finding by the trial court that Officer
Garvey stopped appellant because he suspected appellant was engaged in illegal drug
activities. Therefore, the stop was authorized under either subdivision (d) or (g) of
article 14.03. (5) 

C. Reasonable Suspicion

 Appellant also contends that Officer Garvey did not have a reasonable
suspicion to stop him for drug trafficking. 

 An officer conducts a lawful stop when he has reasonable suspicion to believe
that an individual is violating the law. Ford v. State, 158 S.W.3d 488, 492 (Tex.
Crim. App. 2005). A temporary detention is justified when the detaining officer has
specific articulable facts which, taken together with rational inferences from those
facts, lead the officer to conclude that the person detained is, has been, or soon will
be engaged in criminal activity. Brother, 166 S.W.3d at 257 (citing Terry v. Ohio,
392 U.S. 1, 30, 88 S. Ct. 1868, 1884 (1968)). These facts must amount to more than
a mere hunch or suspicion. Id. (citing Davis v. State, 947 S.W.2d 240, 244 (Tex.
Crim. App. 1997)). To determine whether reasonable-suspicion standard is satisfied,
we disregard any subjective intent of the officer making the stop and look solely to
whether an objective basis for the stop exists. Garcia v. State, 43 S.W.3d 527, 530
(Tex. Crim. App. 2001). 

 The factual basis for stopping a vehicle need not arise from the officer's
personal observation, but may be supplied by information acquired from another
person. Brother, 166 S.W.3d at 257. In Armendariz v. State, the Court of Criminal
Appeals held that a stop based on facts observed by an undercover officer and
transmitted by radio to a deputy sheriff did not violate the Fourth Amendment. 123
S.W.3d 401, 404-05 (Tex. Crim. App. 2003). And, when there has been some
cooperation among police officers, the cumulative information known to the
cooperating officers at the time of the stop is to be considered in determining whether
reasonable suspicion exists. Hoag v. State, 728 S.W.2d 375, 380 (Tex. Crim. App.
1987). 

 In this case, we determine whether the record supports an implicit conclusion
by the trial court that Officer Garvey had a reasonable suspicion to stop appellant for
illegal drug possession. Appellant contends that the anonymous tip received by
Officer Garvey could not have been the basis for reasonable suspicion to stop
appellant's car. Appellant further contends that his conduct observed by the officers
during the surveillance was not itself criminal and could be attributed to legal
activities and motivations. (6)
 

 An anonymous tip or telephone call may justify the initiation of an
investigation, but only rarely will a tip from an unnamed informant of undisclosed
reliability, standing alone, establish the requisite level of reasonable suspicion to
justify an investigative detention. See Florida v. J. L., 529 U.S. 266, 270, 120 S. Ct.
1375, 1378 (2000). Rather, there must be some further indicia of reliability, some
additional facts from which a police officer may reasonably conclude that the tip is
reliable and a detention is justified. See id. 

 To give rise to reasonable suspicion, the officer must be able to corroborate the
improper nature of the subject's behavior. In re A.T.H., 106 S.W.3d 338, 345 (Tex.
App.--Austin 2003, no pet.); Hall v. State, 74 S.W.3d 521, 525 (Tex.
App.--Amarillo 2002, no pet.). Corroborating information that can give rise to
reasonable suspicion includes details that accurately predict the subject's future
behavior, link the subject to the alleged criminal activity, or give a particularized and
objective reason to suspect the subject. Davis v. State, 989 S.W.2d 859, 864 (Tex.
App.--Austin 1999, pet. ref'd). 

 In this case, the officers' testimony showed that their surveillance of appellant
provided the necessary information to corroborate the anonymous tip. Specifically,
not long after the surveillance had been initiated, the officers, who were experienced 
"street crimes" and narcotics officers, saw the Lexus leave 910 Aarons, as had been
predicted by the anonymous caller. The officers observed appellant drive around the
neighborhood, stop, and make contact with pedestrians. Appellant drove back to 910
Aarons, pulled into the driveway for less than one minute, pulled out, approached the
surveillance team, and shone his high beam headlights into Anderson's and Biggs's
vehicles. Appellant then sped off at a high rate of speed through the neighborhood. 
After Officer Garvey pulled behind appellant with his emergency lights and siren
activated, appellant continued to travel at twice the speed limit. 

 Acts or circumstances need not be criminal in themselves to create reasonable
suspicion that misconduct is afoot. Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim.
App. 1997). Rather, the determination of the presence of reasonable suspicion is a
factual one and is made and reviewed by considering the totality of the circumstances
at the of time the stop. Icke v. State, 36 S.W.3d 913, 915 (Tex. App.--Houston [1st
Dist.] 2001, pet ref'd) (citing Loesch v. State, 958 S.W.2d 830, 832 (Tex. Crim. App.
1997) (stating that "facts that do not show reasonable suspicion in isolation may do
so when combined with other facts")). Here, considering the totality of the
circumstances, the police officers could have reasonably deduced that appellant was
engaged in the illegal drug activities, as alleged by the tipster, based on their own
observations and experience. Cf. Hall, 74 S.W.3d at 526. We conclude that the
officers possessed articulable facts to reasonably suspect that appellant was engaged
in illegal activities, thereby justifying the stop of appellant's car. (7) The trial court did
not abuse its discretion by denying appellant's motion to suppress. 

 Appellant's sole issue is overruled.

Conclusion


 We affirm the judgment of the trial court.





 Laura Carter Higley

 Justice


Panel consists of Justices Nuchia, Keyes, and Higley.


Do not publish. Tex. R. App. P. 47.2(b).
1. See Tex. Health & Safety Code Ann. § 481.115(a), (d) (Vernon 2003); see also
id. § 481.102(3)(D) (Vernon Supp. 2006)
.
2. The possession of even less than one gram of cocaine is a state jail felony. See Tex.
Health & Safety Code Ann. § 481.102(3)(D); § 481.115(a), (b). Though classified
as the least serious type of felony, a state jail felony is nonetheless considered a
felony. See Tex. Pen. Code Ann. § 12.04 (Vernon 2003). 

3. An "arrest" under article 14.03 is not limited to a formal, custodial arrest. Mitchell
v. State, 187 S.W.3d 113, 116 (Tex. App.--Waco 2006, pet. ref'd); see Brother v.
State, 166 S.W.3d 255, 260 (Tex. Crim. App. 2005) (approving temporary detention
made by police officer outside of city limits). Rather, the provisions of article 14.03
apply when an officer initiates a stop, such as in this case. See Mitchell, 187 S.W.3d
at 116. Thus, once it is determined that the officer had statutory authority to make the
stop, the next inquiry generally becomes whether the officer had a reasonable
suspicion to make the stop, not whether the officer had probable cause to make an
arrest. See Gurrola v. State, 877 S.W.2d 300, 302 (Tex. Crim. App. 1994) (stating
police officer must have reasonable suspicion to justify a temporary detention); Icke
v. State, 36 S.W.3d 913, 915 (Tex. App.--Houston [1st Dist.] 2001, pet. ref'd)
("Circumstances short of probable cause to arrest may justify a temporary detention
for the purpose of investigation.").

4. "The factual basis for stopping a vehicle need not arise from the officer's personal
observation, but may be supplied by information acquired from another person." 
Brother, 166 S.W.3d at 257; see Armendariz v. State, 123 S.W.3d 401, 404-05 (Tex.
Crim. App. 2003) (upholding stop based on facts observed by undercover officer and
transmitted by radio to deputy sheriff). 
5. Appellant relies on State v. Kurtz to support his contention that Officer Garvey had
no authority to stop him for the traffic offense of speeding. 152 S.W.3d 72 (Tex.
Crim. App. 2004). Kurtz, however, is distinguishable from the present case. The stop
in Kurtz was based solely on a traffic violation. Id. at 79. Here, as discussed, the
traffic infraction (speeding) led Officer Garvey to suspect appellant was engaged in
illegal drug trafficking--an offense for which Officer Garvey was authorized to make
an out-of-jurisdiction stop. See Brother, 166 S.W.3d at 260 (upholding stop when
traffic infraction led officers to suspect Brother was driving while intoxicated--an
offense for which officer could make extra-jurisdictional stop). 
6. Appellant further asserts that, during the suppression hearing, it was shown that the
account of the events found in Officer Garvey's police report differed in a number of
ways from the account of the events provided by the officers at the suppression
hearing. However, any discrepancies were but a factor for the trial court, as fact
finder, to consider in weighing the officers' credibility at the hearing.

7. Appellant also contends that the officers were required to have had probable cause to
stop him. We disagree as discussed supra in note 2.