# NO. 12-19-00299-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BOBBY WOODS, JR.,*<br>*APPELLANT* | *§* | *APPEAL FROM THE 159TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | *§* | *ANGELINA COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Bobby Woods, Jr. appeals his conviction for capital murder. In three issues, Appellant argues that the trial court abused its discretion both in overruling his motion to suppress and his motion for mistrial and that he received ineffective assistance of counsel. We affirm.

## BACKGROUND

Following multiple interviews with law enforcement, Appellant was charged by indictment with the capital murder of three-year-old M.C. Appellant pleaded "not guilty," and the matter proceeded to a jury trial. Ultimately, the jury found Appellant guilty as charged and assessed his punishment at imprisonment for life. The trial court sentenced Appellant accordingly, and this appeal followed.

## MOTION TO SUPPRESS

In his first issue, Appellant argues that the trial court abused its discretion in overruling his motion to suppress. Specifically, he argues that his multiple recorded statements to law enforcement were involuntary due to officers' overreaching and undue influence in light of the length of the interrogations and his "mental deficiencies." He further contends that, in one instance, his expressions of a desire to leave rendered his subsequent confessions involuntary and

changed the nature of one interview from noncustodial to custodial, and, as a result, the previously-given *Miranda*[1] warnings should have been readministered.

**Standard of Review and Governing Law**

We review a trial court's ruling on a motion to suppress under a bifurcated standard. ***Hubert v. State***, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); ***Carmouche v. State***, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). A trial court's decision to grant or deny a motion to suppress generally is reviewed under an abuse of discretion standard. ***Crain v. State***, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); ***Shepherd v. State***, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor and review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor. ***Neal v. State***, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008). At a suppression hearing, a trial court is the exclusive trier of fact and judge of the witnesses' credibility. ***Maxwell v. State***, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). Accordingly, a trial court may choose to believe or to disbelieve all or any part of a witness's testimony. ***State v. Ross***, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). However, a trial court has no discretion in determining what the law is or applying the law to the facts. ***State v. Kurtz***, 152 S.W.3d 72, 81 (Tex. Crim. App. 2004). Thus, a failure by a trial court to analyze or apply the law correctly constitutes an abuse of discretion. ***Id.***

The Fifth Amendment to the United States Constitution commands that no person "shall be compelled in any criminal case to be a witness against himself [.]" U.S. CONST. amend. V; *see also* U.S. CONST. amend. XIV. The warnings set out by the United States Supreme Court in ***Miranda v. Arizona*** were established to safeguard an uncounseled individual's constitutional privilege against self-incrimination during custodial interrogation. *See **Miranda***, 384 U.S. at 442–57, 467–79, 86 S. Ct. at 1611–18, 1624–30. The Supreme Court has defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." ***Herrera v. State***, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007). Unwarned statements obtained as a result of custodial interrogation may not be used as evidence by the state in a criminal proceeding during its case-in-chief. ***Id.***

---

[1] *See **Miranda v. Arizona***, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

2

When considering "custody" for *Miranda* purposes, we apply a "reasonable person" standard—"[a] person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Id.* Our "custody" inquiry also includes an examination of all the objective circumstances surrounding the questioning. *Id.* The subjective belief of law enforcement officials about whether a person is a suspect does not factor into our "custody" determination unless an official's subjective belief was somehow conveyed to the person who was questioned. *Id.* at 525–26.

Texas Code of Criminal Procedure, Article 38.22 governs the admissibility of statements made by a defendant during custodial interrogation in a criminal proceeding. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (West 2018). Section 3 provides that an oral statement is admissible against a defendant in a criminal proceeding if, among other things: (1) the statement was electronically recorded; (2) the defendant was given the warnings set out in Section 2(a) before the statement was made and it is included on the recording; and (3) the defendant "knowingly, intelligently, and voluntarily" waived the rights set out in the warnings. *Id.* at § 3(a) (1)–(2). The warnings provided in Section 2(a) are virtually identical to the *Miranda* warnings, with one exception—the warning that an accused "has the right to terminate the interview at any time" as set out in Section 2(a)(5) is not required by *Miranda*. *See Herrera*, 241 S.W.3d at 526. As with the *Miranda* warnings, the warnings in Section 2(a) of Article 38.22 are required only when there is custodial interrogation. *Id.* Our construction of "custody" for purposes of Article 38.22 is consistent with the meaning of "custody" for purposes of *Miranda*. *Id.*

Furthermore, a confession is involuntary or coerced if the totality of the circumstances demonstrates that the confessor did not make the decision to confess of his own free will. *Vasquez v. State*, 179 S.W.3d 646, 655 (Tex. App.–Austin 2005), *aff'd*, 225 S.W.3d 541 (Tex. Crim. App. 2007); *see Green v. State*, 934 S.W.2d 92, 99 (Tex. Crim. App. 1996) (citing *Arizona v. Fulminante*, 499 U.S. 279, 285–86, 111 S. Ct. 1246, 1251–52 113 L. Ed. 2d 302 (1991)). We determine whether a confession was voluntary under the due process clause of the Fourteenth Amendment by examining the totality of the circumstances surrounding its acquisition. *Vasquez*, 179 S.W.3d at 655.

**Discussion**

Appellant's motion to suppress addresses multiple statements Appellant gave to law enforcement prior to his being charged in this matter. We will address each of these challenged statements in turn.

*August 17, 2015 Written Statement*

The trial court made the following findings of fact and conclusions of law with regard to this statement:

> The Court finds that the Defendant provided a statement (**Exhibit 1**) during the late evening of **August 17, 2015**, at his residence on Earnest Landrum Road, Lufkin, Angelina County, Texas. At the time the Defendant gave this statement, he was not in custody nor the target of any investigation into the death of 3 year old, [M.C.].
>
> Therefore, the Court finds that this statement was non-custodial, not given under circumstances that were the equivalent of custody, was not subject to Miranda Warnings, and was freely and voluntarily given to Detective Pat Nichols of the Angelina County Sheriff's Office on that date. The Court further finds that no reasonable person would have believed that he had been deprived of this freedom to a degree associated with formal arrest. This statement was exculpatory.

At the hearing on Appellant's motion, former Angelina County Sheriff's Office Detective Patrick Nichols testified that he was assigned to the initial investigation into M.C.'s disappearance. Nichols further testified that on the evening of August 17, 2015, he was at Appellant's residence, which was located at 388 Earnest Landrum Road, and where he took written statements from Appellant, as well as several of M.C.'s family members. M.C.'s great grandmother, Janey Ramsey, similarly testified that she and other family members, as well as Appellant, gave written statements to law enforcement on August 17, 2015, in the home on Earnest Landrum Road. Nichols stated that he passed out written statement forms to all the people in Appellant's residence that evening. Angelina County Sheriff's Department Sergeant Harold Rapsilver stated that he observed Nichols take written statements from the family members and Appellant at the Earnest Landrum Road residence. Lastly, Nichols testified that Appellant, who was in his own home, was not in custody at the time and neither was persuaded to make a written statement, nor was he coerced in conjunction with his making a written statement.

Here, the record reflects that Appellant made this written statement in his own home, and there is no evidence that his freedom of movement was restrained. Moreover, the record indicates that the encounter was voluntary; Nichols gave Appellant a written statement form, which

Appellant completed. Furthermore, there is no evidence that Appellant was coerced, threatened, or otherwise induced by persuasion to make this written statement. Thus, we conclude that the trial court correctly determined that this interaction was not custodial, *Miranda* warnings were not required, and Appellant's statement was made voluntarily. *See Herrera*, 241 S.W.3d at 525. Therefore, we hold that the trial court did not abuse its discretion in overruling Appellant's motion to suppress this statement. *See* TEX. CODE CRIM. PROC. ANN. arts. 38.21 (West 2005), 38.22 § 5.

*August 18, 2015 (Morning) Video Recorded Oral Statement*

The trial court made the following findings of fact and conclusions of law with regard to this statement:

> The Court finds that the Defendant provided a video recorded, oral statement **(Exhibit 2)** and a written sketch **(Exhibit 3)** during the early morning hours of **August 18, 2015,** after family members of the Defendant, including his Co-Defendant, Billie Jean Cuttler, and the Defendant had been requested to go to the Sheriff's Office to help with the investigation into the drowning death of [M.C.]. At the time the Defendant gave this statement and sketched his movements of August 15th, he had arrived with family members in a vehicle of a family member, he was not in custody, he was not a suspect of a homicide, he was aware of the fact that other family members had and were being interviewed and that he was free to go. Following this statement, the Defendant was permitted to leave the Sheriff's office.

> Therefore, the Court finds that this video recorded, oral statement and this written sketch of the Defendant were non-custodial, not given under circumstances that were the equivalent of custody, were not subject to Miranda Warnings and were freely and voluntarily given to Detective Harold Rapsilver (Rapsilver) of the Angelina County Sheriff's Office on that date. The Court further finds that no reasonable person would have believed that he had been deprived of his freedom to a degree associated with a formal arrest. This statement and sketch were exculpatory.

At the hearing on Appellant's motion, Ramsey testified that on August 18, 2015, she brought her family members and Appellant to the Angelina County Sheriff's Office to give oral statements. According to Ramsey, Appellant came willingly and was not coerced. Ramsey stated that at that time, Appellant had no means of transportation other than through her or others. Rapsilver testified that he took an oral statement from Appellant at the Angelina County Sheriff's Office that morning. Rapsilver further testified none of the people there that day were in custody and they all were free to leave. Rapsilver stated that the interview with Appellant was "voluntary" and that Appellant was not constrained or coerced during the interview.

Here, the record reflects that Appellant arrived at the Angelina County Sheriff's Office early on the morning of August 18, 2015, where he gave an oral statement. The facts and circumstances of record do not indicate that Appellant was a suspect or was in custody, but rather

that he was free to leave at any time. The record further reflects that Appellant came to the interview of his own accord, was not coerced to make his oral statement, was not restricted in his freedom of movement, and, instead, gave his statement freely. Thus, we conclude that the trial court correctly determined that this interaction was not custodial, **_Miranda_** warnings were not required, and Appellant's statement was voluntarily made. *See **Herrera**,* 241 S.W.3d at 525. Therefore, we hold that the trial court did not abuse its discretion in overruling Appellant's motion to suppress this statement. *See* TEX. CODE CRIM. PROC. arts. 38.21, 38.22 § 6.

<u>*August 18, 2015 (Afternoon) Video Recorded, Dictated, Written Statement*</u>

The trial court made the following findings of fact and conclusions of law with regard to this statement:

> The Court finds that the Defendant provided a video recorded, dictated statement **(Exhibit 7F)** to Detective Brett Maisel (Maisel) later in the afternoon of **August 18, 2015,** after having agreed to a polygraph examination (exam) that was conducted by Lt. Jerry Smith (Smith) of the Lufkin Police Department of Angelina County. At the time the Defendant gave this statement, the Co-Defendant and he had arrived with a family member in a vehicle of the family member at [the] Sheriff's Office and neither the Co-Defendant nor he was in custody. The Defendant had returned for the expressed purpose of taking a polygraph examination as he had agreed to do in his early morning, non-custodial, video recorded, oral interview with Rapsilver on August 18th.
>
> Upon his arrival, Smith obtained the Defendant's consent to conduct the polygraph **(Exhibit 7A)** and advised him of his Miranda Warnings on a form **(Exhibit 7B)** provided by Smith and read to the Defendant by Smith. The Defendant was told by Smith that he was not in custody and was advised that he was free to leave. The Defendant was not coerced or unconstitutionally persuaded to participate in the exam and he understood all of the rights explained to him; thereafter, unequivocally waiving his rights under the Constitution of the United States and of the State of Texas. Following the conclusion of the exam by Smith and after he had been told that he had been deceptive and told again that he was not in custody and that he was free to leave, the Defendant spoke to Maisel and provided a video recorded, orally dictated statement **(Exhibit 7F)** of his recollection of the events surrounding the drowning death of [M.C.] on August 17th. Following this statement, the Defendant and his Co-Defendant left the Sheriff's Office with the family member who had brought the two there to meet with Rapsilver and the polygrapher (Smith).
>
> Therefore, the Court finds that this statement was non-custodial, was not given under circumstances that were the equivalent of custody, was not subject to Miranda Warnings even though the Defendant was made aware of them and voluntarily waived such rights and was freely and voluntarily given to Maisel and Smith. The Court further finds that no reasonable person would have believed that he had been deprived of his freedom to a degree associated with a formal arrest. This statement was exculpatory.

At the hearing on Appellant's motion, as it pertains to the trial court's decision not to suppress Exhibit 7F, Ramsey testified that early on the afternoon of August 18, 2015, she brought Appellant back to the Angelina County Sheriff's Office and that Appellant did so without

complaint or protest. Angelina County Sheriff's Department Lieutenant Jerry Smith testified that he met Appellant for the first time that afternoon. Smith stated that, at that time, Appellant gave no indication that he was there unwillingly and that Appellant was told he could leave at any time. Angelina County Sheriff's Department Detective Brett Maisel testified that Appellant was free to leave during this polygraph examination. Furthermore, Ramsey stated that she was present when Appellant exited the polygraph examination and that she observed no physical, emotional, or mental indication from Appellant that he had been coerced to make a statement. Moreover, Smith testified that both he and Appellant signed a *Miranda* form whereby Appellant acknowledged that his *Miranda* rights were explained to him and that he waived such rights before his polygraph examination. Maisel also stated that he witnessed Appellant waive his *Miranda* rights.

Here, the record reflects that on the afternoon of August 18, 2015, Ramsey took Appellant back to the Angelina County Sheriff's Office where he met with Smith for a polygraph examination. The record further reflects that Appellant was made aware that he was free to leave. There is no evidence that Appellant's freedom of movement was constrained. Nonetheless, the evidence indicates that Appellant ultimately gave a written statement and was read and waived his *Miranda* rights. *See, e.g.*, TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2. Lastly, the record reflects that Appellant went to the polygraph examination without indicating any reservations and made his written statement voluntarily, and the record indicates nothing conflicting with the trial court's finding that Appellant gave his statement voluntarily. Thus, we conclude that the trial court correctly determined that this interaction was not custodial, *Miranda* warnings were not required but were given anyway, and Appellant's written statement was made voluntarily. *See **Herrera***, 241 S.W.3d at 525. Therefore, we hold that the trial court did not abuse its discretion in overruling Appellant's motion to suppress this statement. *See* TEX. CODE CRIM. PROC. ANN. arts. 38.21, 38.22 § 6.

### *August 27, 2015 Video Recorded Oral Confession and Orally Dictated Confession*

The trial court made the following findings of fact and conclusions of law with regard to these statements:

> The Court finds that on **August 27, 2015**, the Defendant provided both a video recorded oral confession (**Exhibit 9F**) and a video recorded, orally dictated confession (**Exhibit 9G**) to Maisel, Ranger Steve Rayburn (Rayburn) with the Texas DPS and Detective Jeff Farmer (Farmer).

7

The Court finds that, after having placed a cell phone call to Maisel on August 20, 2015, along with his Co-Defendant, wherein he questioned Maisel about the progress of Maisel's investigation and expressed his concerns that family members were threatening him with harm because they suspected the Defendant had something to do with the drowning death of [M.C.], the Defendant agreed to return to the Sheriff's Office on **August 27, 2015** at about 9:30 a.m. for another exam.

On that date, the Defendant was driven to the Sheriff's Office by a friend of [M.C.]'s family and dropped off there to complete another exam with Smith. Again, the Defendant consented to the exam **(Exhibit 9A)** and was Mirandized **(Exhibit 9B)** by Smith. In this non-custodial setting, the Defendant again waived his rights under the Constitution of the United States of America and the State of Texas without being coerced or unconstitutionally persuaded to do so.

Following this exam and again being advised that he had been deceptive, the Defendant asked if [he] could go home. Smith told the Defendant that he was free to leave but asked him if he wanted to speak to Maisel again before he did so. The Defendant nodded his head in the affirmative, said 'yes' and remained to speak with Maisel further.

During this post exam interview with Maisel, the Defendant offered another version of his recollection of the events surrounding [M.C.]'s drowning death and began to cry. While the Defendant cried on the shoulder of Maisel and Maisel sought to comfort the Defendant, in a barely audible voice, the Defendant said that he wanted to go home. Maisel, continuing to comfort the weeping and distraught Defendant, said 'Ok. Ok. Ok. Bobby.  Just a few more questions.  OK?' The Defendant remained on the shoulder of Maisel crying and answered more questions about his latest rendition of the events involving [M.C.]'s death.

Taking a break, law enforcement officers removed all exam equipment from the room and permitted the Defendant to take a break, as well, before returning to the interview room as requested to do so by Maisel.

When the Defendant returned from his break, he noted to Maisel that there was an extra chair in the interview room and asked Maisel why there was another chair. Maisel offered that his friend, Texas Ranger, Steve Rayburn, would be joining them later. At that time, the Defendant was reminded again by Maisel that he was free to leave. The Defendant chose to remain.

Upon entering the room Rayburn took over the interview and began to question and advise the Defendant about his (Rayburn's) participation in the interview and the facts as he, Rayburn, understood them. During the course of his participation, when it became clear to Rayburn that the Defendant was still recounting a story that Rayburn believed to be untrue, Rayburn changed his approach to questioning the Defendant and employed a sterner and fatherly technique. It was shortly thereafter that the Defendant recanted all of his earlier versions of the events of August 17, 2015, and, in a video recorded statement **(Exhibit 9F),** the Defendant orally confessed to his role in drowning [M.C.] to make room for what he believed to be his child in the home in which his Co-Defendant and he resided.

Thereafter, the Defendant was given another break and law enforcement officers rearranged the furniture in the interview room to facilitate the final interview of the day. When the Defendant returned to the interview room, he was again Mirandized **(Exhibit 9G)** and in a video recorded, orally dictated, written confession **(Exhibit 9G)** provided Maisel with the details of his role in drowning [M.C.] and another hand drawn sketch **(Exhibit 9H)** of the pond in which he pushed [M.C.] to drown. Following the Defendant's non-custodial, voluntary video recorded written statement and sketch, he was permitted to leave just as promised by Smith and Maisel. Before leaving, Maisel clarified, again, with the Defendant that he had been free to leave and the Defendant's continuation of the interview with Maisel was voluntary. The Defendant left the Sheriff's Office that evening at about 6:00 p.m. even though he had confessed to the Capital Murder of 3 year old [M.C.].

Therefore, the Court finds from a totality of the circumstances that the Defendant's first, video recorded, oral confession of **August 27th,** as depicted in **Exhibit 9F** and that the Defendant's second and later, video recorded, oral confession; his orally dictated, signed confession and his hand written sketch, as depicted in **Exhibits 9G** and **9H,** were non-custodial, not given under circumstances that were the equivalent of custody but were subject to Miranda Warnings and that the Defendant understood fully his rights under the Constitution of the United States and of the State of Texas. The Court further finds that no reasonable person would have believed that he had been deprived of his freedom to a degree associated with a formal arrest. The Court further finds that the Defendant, in all things, voluntarily confessed to the drowning death of [M.C.] with full knowledge of his rights and the consequences of making such statements to law enforcement officers involved. These statements were inculpatory.

. . . . .

The Court finds from a totality of the circumstances that the Defendant did not make an unambiguous or unequivocal request to terminate any of his interviews with law enforcement officers involved and the law enforcement officers involved in questioning the Defendant conducted themselves properly in accordance with the Defendant's demeanor, mannerism, tone of voice, responses and behavior in all interviews.

At the hearing on Appellant's motion, Maisel testified that Appellant called the Angelina County Sheriff's Office a few days prior to August 27, 2015, and, among other things, inquired about the progress of the investigation. Smith testified that he conducted a second polygraph examination of Appellant on August 27, 2015. Smith further testified that it was made clear to Appellant that he was free to leave during the second polygraph examination. Smith stated that he had Appellant fill out the required forms again, which included the *Miranda* rights form. Maisel also testified that Appellant was told he was free to leave at any time and that Appellant was not in custody at that time. According to Smith, during the questioning, had Appellant stated that he wanted to "go home," he would have been free to leave. But he explained that many factors determine whether such an expression or similar statement truly expresses a desire to terminate the interview and he discussed previous circumstances where more clear language was used, but the interviewee continued talking and participating in the examination afterward. Maisel acknowledged that Appellant asked, "Can I go now," to which Smith responded, "You can go at any time." But Maisel did not consider Appellant's statement to be an unequivocal assertion of his desire to terminate the interview, particularly since Appellant continued to participate in the interview. Maisel further acknowledged Appellant's stating, "Can I go home?" But he explained that he again continued to participate in the interview after making that statement. Lastly, Maisel noted that, despite their having probable cause to arrest Appellant following the interview, he

9

chose not to arrest Appellant because he believed such a course of action would have been inconsistent with his previous representations to Appellant that he was free to leave.

Here, the record reflects that during the August 27, 2019 polygraph examination, both Smith and Maisel told Appellant that he was free to leave and that he was not in custody. There is no evidence in the record that Appellant's freedom of movement was constrained. Nonetheless, the evidence indicates that Appellant ultimately gave a formal statement after having been read and having waived his *Miranda* rights. *See, e.g.*, TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2. Smith and Maisel testified that during the second polygraph examination, Appellant made statements potentially indicative of a desire to "go home." However, both Smith and Maisel testified that Appellant never made the statement in such a way nor took any subsequent action that caused such a pronouncement to rise to the level of an unequivocal expression of an intention by Appellant to terminate the interview. Maisel stated that although Appellant asked if he could leave and was told he could leave at any time, he, nevertheless, continued to participate in the interview. The record further indicates that Appellant eventually took a break and, thereafter, finished his statement. Having considered all the objective circumstances surrounding the questioning, we conclude that the trial court correctly determined that Appellant did not state an unequivocal intention to terminate the interview, which, coupled with his failure to take any action consistent with a desire to terminate the interview, indicated that his participation in the interaction with law enforcement remained voluntary. *See **Herrera***, 241 S.W.3d at 525. Thus, we conclude that the trial court correctly determined that this interaction was not custodial, *Miranda* warnings were not required but were given anyway, and Appellant's statement was made voluntarily. *See id.* Therefore, we hold that the trial court did not abuse its discretion in overruling Appellant's motion to suppress these statements. *See* TEX. CODE CRIM. PROC. ANN. arts. 38.21, 38.22 § 6.

*August 28, 2015 Video Recorded, Dictated, Written Confession*

The trial court made the following findings of fact and conclusions of law with regard to this statement:

> The Court finds that on **August 28, 2015**, after obtaining a warrant for the Defendant's arrest from a neutral and detached magistrate, the Defendant provided another video recorded and orally dictated written confession (**Exhibit 10B**) to Maisel that was custodial and subject to Miranda Warnings (**Exhibit l0A**).
>
> At the Sheriff's Office, on this occasion, the Defendant was advised of his rights and given certain warnings that comported in all respects with the Constitution of the United States and the

10

State of Texas. After being so duly warned, the Defendant gave a video recorded statement and an orally dictated one that was inculpatory.

At the hearing on Appellant's motion, Maisel testified that Appellant was permitted to leave on the night of August 17, 2015, but that a warrant was obtained the next morning from a magistrate and Appellant was arrested. Maisel further testified that he and Appellant reviewed the *Miranda* warnings and that Appellant waived his rights.

Here, Maisel testified that he obtained a warrant from a neutral magistrate and arrested Appellant. Because Appellant had been formally arrested at this point, any subsequent questioning would be custodial unless Appellant made bond or was otherwise released from custody. *See Herrera*, 241 S.W.3d at 525. Thus, *Miranda* warnings were required before any interaction with Appellant while he remained in custody. *See id.* The record reflects that following his arrest, Appellant was taken to an interview room where he was read his *Miranda* rights and where he subsequently waived those rights before he made another written statement. There is no evidence that following Appellant's waiver of his *Miranda* rights that he was coerced or threatened into giving this final statement. Thus, we conclude that the trial court correctly determined that Appellant was made aware of his *Miranda* rights, voluntarily waived those rights, and that his statement was made voluntarily. *See id.* Therefore, we hold that the trial court did not abuse its discretion in overruling Appellant's motion to suppress this statement. *See* TEX. CODE CRIM. PROC. ANN. arts. 38.21, 38.22 § 6.

*Voluntariness - Mental Deficiencies*

Appellant argues that he has "mental deficiencies," which, when considered in light of the circumstances, resulted in his involuntary participation in the various interviews with law enforcement. The trial court made the following findings of fact and conclusions of law, which pertain to Appellant's argument:

> The Court further finds from viewing, in its totality, all the circumstances surrounding the making of his **August 27th** and **August 28th** statements, that the Defendant, at the time of the making thereof, understood the rights of which he had been advised, and further that the Defendant knowingly and intelligently waived these rights. The totality of the circumstances includes, but is not limited to: the defendant's claims through his counsel of a 'limited mental capacity' wherein Dr. Wendy Elliott reported and testified that the defendant does not suffer from a diagnosed mental illness or disease or that he suffers from an intellectual disability; the defendant's apparent intelligence as viewed in various exhibits of the State; his ability to articulate his thoughts (be they truthful or perjurious) to various law enforcement officers and Dr. Elliott; the information within the knowledge of the Defendant as to the nature of the crime and the investigation into the death of [M.C.]; the knowledge on the part of the Defendant as to his right to counsel and his right to avail

11

himself of counsel, as well as his right to continue or discontinue, unambiguously and unequivocally, any interview with any member of law enforcement; the degree, if any, to which the Defendant was held against his will or held in custody prior to making any of his statements or confessions; the method of interrogation used by all law enforcement officers involved in interviewing the Defendant, including the duration and length of the investigation, the number of exams and interviews conducted with the Defendant beginning on August 17, 2015 and continuing through August 28, 2015, as well as the locations and techniques employed by various members of law enforcement.

The Court finds that there is no credible evidence that the Defendant was coerced or unconstitutionally and impermissibly persuaded at the time of any of his interviews.

The Court further finds that at no time did the Defendant suffer from some limited mental capacity that made the Defendant easily influenced to give answers to questions sought by interviewing law enforcement officers nor did the Defendant suffer from some medically or psychologically diagnosed mental illness or intellectual disability that made the Defendant more susceptible to suggestion by questioning law enforcement officers.

. . . .

The Court finds that in all things the Defendant's statements **(Exhibits 1, 2, 3, 7F, 9F, 9G, 9H & l0B)** were in all things voluntary and made by the Defendant with full knowledge of his rights and the consequences in making such statements and providing such sketches.

A person's mental deficiency is a factor but is not alone determinative in ascertaining the voluntariness of a confession and the waiver of the Fifth Amendment privilege against self-incrimination. *Penry v. State*, 903 S.W.2d 715, 744 (Tex. Crim. App. 1995); *Smith v. State*, 779 S.W.2d 417, 429 n.8 (Tex. Crim. App. 1989) (that mentally challenged defendant was questioned by police more or less continuously for eight hours without sleep and food and with repeated attacks on his veracity did not require finding of involuntariness); *see Casias v. State*, 452 S.W.2d 483, 488 (Tex. Crim. App.1970) (confession admissible even though defendant had I.Q. of 68, was illiterate, and had mental age of eight to ten years); *see also Grayson v. State*, 438 S.W.2d 553, 555 (Tex. Crim. App. 1969) (statements admissible from a defendant with an I.Q. of 51 and mental age of six years).

At the hearing on Appellant's motion to Suppress, Clinical Criminal Forensic Psychologist Wendy Elliot testified that she conducted a psychological examination of Appellant with regard to his competency to confess, wherein she subjected him to a wide range of psychological evaluations. She found that Appellant consistently scored low on psychological tests concerning intelligence, memory deficits, cognitive functioning, and other areas. Specifically, Elliot stated that Appellant's score on "general abilities," "processing speed," and verbal comprehension was "below average," his scores in perceptual reasoning were "a little bit higher," and his "working

12

memory" was "far below the average range." She further testified that Appellant scored below average on most subjects and very low in math on the "Wide Range Achievement Test," which assesses an individual's basic academic functioning. She generally described Appellant as being in a "borderline intellectual functioning range," but she stated that he is not intellectually disabled. She specified that Appellant performed academically at approximately a fourth grade level. And while Elliot could not give an opinion about whether Appellant, in fact, made a false confession in this case, she opined that Appellant displayed many of the factors which act in combination in those persons likely to make a false confession during a polygraph examination. Yet she acknowledged that a person who displayed such factors still could give a true confession and, further, that a person of lower-than-average intelligence "most certainly" can make an intelligent decision to waive his rights.

Based on our review of the record and considering the totality of the circumstances related to Appellant's statements to law enforcement, with particular attention in this instance given to Elliot's testimony, we conclude that Appellant's intellectual deficiencies did not rise to the level wherein they interfered with his ability to interact voluntarily with law enforcement or to waive his rights. Therefore, we conclude that the trial court correctly determined that Appellant's statements were made voluntarily in spite of his intellectual deficiencies. *See **Herrera***, 241 S.W.3d at 525; *see also **Penry***, 903 S.W.2d at 744. Therefore, we hold that the trial court did not abuse its discretion in overruling Appellant's motion to suppress on these grounds. Appellant's first issue is overruled.

## MOTION FOR MISTRIAL

In his second issue, Appellant argues that the trial court abused its discretion in overruling his motion for mistrial.

We review a trial court's denial of a mistrial for an abuse of discretion. ***Ocon v. State***, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). We view the evidence in the light most favorable to the trial court's ruling. *Id.* The ruling must be upheld if it was within the zone of reasonable disagreement. *Id.* Furthermore, instructions to the jury generally are considered sufficient to cure improprieties that occur during trial, and we generally presume that a jury will follow the judge's instructions. *See **Gamboa v. State***, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009).

In the instant case, Appellant's motion for mistrial arose during the State's examination of Smith about Appellant's polygraph examination[2] as follows:

Q. Okay. Now, you have used your polygraph instrument for examinations for how long?
A. Since 2011, so about 8 to 9 years, I guess.

Q. Okay. You have confidence in the particular physiological things that are being measured, do you not?
A. I do.

[APPELLANT'S COUNSEL]: I'll renew my objection at to this point.

THE COURT: I'll sustain to the extent that I've permitted his personal belief --

[PROSECUTING ATTORNEY]: We are talking --

THE COURT: -- but not beyond that.

[PROSECUTING ATTORNEY]: Thank you.

Q. (BY [PROSECUTING ATTORNEY]): We are talking about the instrument that you used, the device that you used to measure physiological changes in the person that's being polygraphed, are we not? That's what we're talking about where the instrument is concerned?
A. Yes, sir.

Q. You have worked with that particular device, as you've told us, for many, many years; is that correct?
A. Yes, sir.

Q. Do you have every reason to believe that it was functioning properly on August the 18th of 2015?
A. Yes, sir.

Q. You have confidence that the machine can do what it is you use it for in connection with the polygraph exam of the Defendant; is that right?
A. I do.

Q. And the purpose of doing the test is to do what, find out what?
A. The truth.

Q. Okay. And if someone is deceiving or not deceiving --

[APPELLANT'S COUNSEL]: Your Honor, I'll object

THE COURT: Counsel, please approach.

---

[2] Due to the inherent unreliability of and tendency to be unduly persuasive, the existence and results of polygraph examinations are inadmissible for any purpose in a criminal proceeding over proper objection. *See Martines v. State*, 371 S.W.3d 232, 250 (Tex. App.–Houston [1st Dist.] 2011, no pet.) (citing *Tennard v. State*, 802 S.W.2d 678, 683 (Tex. Crim. App. 1990); *Jasso v. State*, 112 S.W.3d 805, 813 (Tex. App.–Houston [14th Dist.] 2003, pet ref'd)). However, in this case, as Appellant acknowledges in his brief, there was an agreement between the parties to permit discussion of Appellant's taking a polygraph exam as relevant to prove that his later confession was involuntary. But that discussion of the polygraph exam was to be "limited as to its truthfulness."

(At the bench.)

THE COURT: Okay. That's enough.

[APPELLANT'S COUNSEL]: That's exactly --

THE COURT: That's enough. I have sustained the objection. I am going to renew the instruction to the jury. Now, you can ask him if he believes it, but no more. Do you understand my limitation?

[PROSECUTING ATTORNEY]: Let me put on the record, I misunderstood what you told me I could do. The thought was about the instrumentation, the instrumentation alone, that's my -- that's where I'm going with that. That's all.

THE COURT: You've gone way too far, Counsel.

[PROSECUTING ATTORNEY]: All right, Your Honor. I understand.

THE COURT: You can ask him his opinion -- his belief, that's it. And then I'm going to give the instruction.

[PROSECUTING ATTORNEY]: His opinion that the machine operates properly, that's what I asked him about, the machine.

[APPELLANT'S COUNSEL]: No. You asked him --

THE COURT: About the truth. You got the truth answer. You can ask that question, that's it.

[PROSECUTING ATTORNEY]: Okay, Your Honor.

THE COURT: Don't push me on this.

[PROSECUTING ATTORNEY]: I'm not, Your Honor.

(Counsel return to Counsel tables.)

THE COURT: I sustain the objection.

You may ask one final question consistent with my guidelines. Ladies and gentlemen, I will have a renewed instruction for you.

[APPELLANT'S COUNSEL]: Excuse me, Your Honor.

(At the bench.)

[APPELLANT'S COUNSEL]: For the record, after the instruction I will move for mistrial.

THE COURT: I respectfully deny that, but it's getting dangerously close.

. . . .

(Counsel return to Counsel tables.)

. . . .

THE COURT: All right. Ladies and gentlemen, I'm going to remind you of my instruction yesterday. Under Texas law, polygraph examinations and the results are ordinarily -- I'll use that

word today now -- not admissible in evidence to show the truth and accuracy of the test or the results of the test. You're, therefore, instructed again today that you must not consider the polygraph examination or the results of the polygraph examination as establishing in any way that any statement made by the Defendant was truthful or untruthful, deceptive, or not deceptive. Any evidence or testimony concerning polygraph examinations and their results have been admitted before you for the limited purpose of assisting you, if it assists you at all, on the issue of voluntariness of statements made by the Defendant. And you must not consider such evidence for an[y] other purpose. And, again, you will have that in writing at the conclusion of the evidence.

Asking an improper question alone, by itself, seldom will call for a mistrial. *See Hernandez v. State*, 805 S.W.2d 409, 413–14 (Tex. Crim. App. 1990). In most cases, any harm from such a question may be cured by an instruction to disregard the question, except in those cases where it appears that the question or evidence clearly is calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced in their minds. *Id.* Furthermore, the mere mention of a polygraph examination does not automatically constitute reversible error, even when the results are revealed. *See Martines*, 371 S.W.3d at 250. Generally, when a polygraph examination is mentioned, but the results are not revealed, an instruction to disregard is sufficient to cure any error. *Id.* at 251.

In the instant case, based on our review of the record, there is nothing that suggests that the prosecuting attorney's unanswered question to Smith clearly was calculated to inflame the minds of the jury or of such a nature that the jury could not ignore it and fairly examine the evidence in arriving at a verdict. *See Gamboa*, 296 S.W.3d at 580. Accordingly, we presume that the jury followed the trial court's extensive instructions. *See id.* Therefore, we hold that the trial court did not abuse its discretion in overruling Appellant's motion for mistrial. Appellant's second issue is overruled.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In his third issue, Appellant argues that his trial counsel was ineffective because he allowed the admission of the testimony of the polygraph examiner, which undermined the defensive theory of the case that Appellant was coerced to confess falsely.

**Standard of Review and Governing Law**

Claims of ineffective assistance of counsel are evaluated under the two-step analysis articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 674 (1984). The first step requires the appellant to demonstrate that trial counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *See Strickland*, 466

U.S. at 688, 104 S. Ct. at 2065. To satisfy this step, the appellant must identify the acts or omissions of counsel alleged to be ineffective assistance and affirmatively prove that they fell below the professional norm of reasonableness. *See McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). The reviewing court will not find ineffectiveness by isolating any portion of trial counsel's representation but will judge the claim based on the totality of the representation. *See Strickland*, 466 U.S. at 695, 104 S. Ct. at 2069.

In any case considering the issue of ineffective assistance of counsel, we begin with the strong presumption that counsel was effective. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). We must presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *See id.* Appellant has the burden of rebutting this presumption by presenting evidence illustrating why his trial counsel did what he did. *See id.* Appellant cannot meet this burden if the record does not affirmatively support the claim. *See Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). A record that specifically focuses on the conduct of trial counsel is necessary for a proper evaluation of an ineffectiveness claim. *See Kemp v. State*, 892 S.W.2d 112, 115 (Tex. App.–Houston [1st Dist.] 1994, pet. ref'd).

Before being condemned as unprofessional and incompetent, defense counsel should be given an opportunity to explain his or her actions. *See Bone v. State*, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002). Thus, absent a properly developed record, an ineffective assistance claim must usually be denied as speculative, and, further, such a claim cannot be built upon retrospective speculation. *Id.* at 835.

Moreover, after proving error, the appellant must affirmatively prove prejudice from the deficient performance of his attorney. *See Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999); *Burruss v. State*, 20 S.W.3d 179, 186 (Tex. App.–Texarkana 2000, pet. ref'd). The appellant must prove that his attorney's errors, judged by the totality of the representation and not by isolated instances of error, denied him a fair trial. *Burruss*, 20 S.W.3d at 186. It is not enough for the appellant to show that the errors had some conceivable effect on the outcome of the proceedings. *Id.* He must show that there is a reasonable probability that, but for his attorney's errors, the jury would have had a reasonable doubt about his guilt or that the extent of his punishment would have been less. *See id.*; *see also Bone*, 77 S.W.3d at 837.

**Agreeing to Admit Evidence of Polygraph Examination to Prove Involuntary Confession**

Appellant argues that his trial counsel was ineffective because he sought by agreement to admit limited evidence of Appellant's having taken a polygraph exam in order to demonstrate that Appellant's ensuing confessions were made involuntarily. As set forth above, this court acknowledges the longstanding rule that the fact of a defendant's having taken a polygraph exam is inadmissible for any purpose in a criminal proceeding over proper objection. *See Martines*, 371 S.W.3d at 250. Nonetheless, it is apparent from the record that Appellant's counsel's decision was based in trial strategy, i.e., to help demonstrate, along with other evidence, that Appellant's confessions were not given voluntarily. Further still, the court of criminal appeals has held that "although the introduction of polygraph evidence almost always falls below an objective standard of reasonableness because most attorneys will have no reasonable strategy in allowing the introduction of such evidence, we cannot categorically exclude the possibility that a trial attorney, under certain circumstances, could use the admission of polygraph evidence to his client's favor." *Ex parte Bryant*, 448 S.W.3d 29, 40 (Tex. Crim. App. 2014); *but cf. Andrews v. State*, 159 S.W.3d 98, 102–03 (Tex. Crim. App. 2005) (reversing a conviction "in a rare case" on the basis of ineffective assistance of counsel when trial counsel did not object to a misstatement of law by the prosecutor during argument); *Fuller v. State*, 224 S.W.3d 823, 836 (Tex. App.–Texarkana 2007, no pet.) (holding that, in light of *Andrews v. State*, failure to object to solicited testimony concerning child sexual assault victim's truthfulness not based on plausible trial strategy).

Because the record supports the existence of an explicit trial strategy, *Andrews* applies only to the extent that Appellant's counsel's trial strategy could be considered so outrageous that no competent attorney would have engaged in it. *See Menefield*, 363 S.W.3d at 593. Here, based on our review of the record, we cannot conclude that the stated trial strategy—counsel's agreement to admit, on an explicitly limited basis, polygraph examination evidence of a defendant who has confessed to murdering a three-year-old child because he believes it is relevant and necessary, in conjunction with other evidence, to help demonstrate that law enforcement officers, who understood the unreliability of polygraph exam results, attempted to use such results in an overbearing manner to persuade said defendant to confess—is patently unreasonable or outrageous.

Thus, we conclude that the facts before us are distinguishable from the facts in *Andrews* and *Fuller*, and Appellant's trial counsel's alleged deficient conduct is not "so outrageous that no

competent attorney would have engaged in it." *See **Menefield***, 363 S.W.3d at 593. Therefore, we hold that Appellant has not met the first prong of ***Strickland*** and, as a result, cannot overcome the strong presumption that his counsel performed effectively. Appellant's third issue is overruled.

## DISPOSITION

Having overruled Appellant's first, second, and third issues, we ***affirm*** the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered April 7, 2021.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

APRIL 7, 2021

NO. 12-19-00299-CR

**BOBBY WOODS, JR.,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

---

Appeal from the 159th District Court

of Angelina County, Texas (Tr.Ct.No. 2015-0757)

---

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed** and that this decision be certified to the court below for observance.

James T. Worthen., Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*