# NO. 12-23-00305-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JACK CODY RABURN,*<br>*APPELLANT* | § | *APPEAL FROM THE 392ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Jack Cody Raburn appeals his convictions for attempted capital murder of a peace officer, aggravated assault of a public servant with a deadly weapon, manufacture or delivery of a controlled substance, unlawful possession of a firearm by a felon, and evading arrest or detention with a motor vehicle. In two issues, Appellant asserts the trial court erred in overruling his motion to suppress and failing to issue findings of fact and conclusions of law. We affirm.

## BACKGROUND

On March 4, 2021, Henderson County Sheriff's Deputy Joshua Shoemake initiated a traffic stop on Appellant's red Chevrolet pickup for making a wide turn and having an obscured license plate. Appellant initially complied and pulled over. When Shoemake exited his vehicle, Appellant sped off. Shoemake initiated a pursuit and called for backup while Appellant drove erratically, accelerated, decelerated, and turned off his headlights. Appellant even stopped in the roadway, reversed, and crashed into Shoemake's vehicle. Deputy Eduardo Gonzalez eventually joined the pursuit. Appellant threw an object from the vehicle and slowed down enough to bail from the vehicle while it was still moving. Gonzalez pursued Appellant on foot through a field

while Shoemake attempted to cut Appellant off with his vehicle. Appellant jumped over two fences and then shot at Gonzalez, striking him through the thigh and ankle. Officers attended to Gonzalez while Appellant continued to flee.

Appellant's abandoned truck contained 185 grams of methamphetamine and drug paraphernalia. The truck was registered to Randy Freeman, who told officers that he sold his red Chevrolet to Appellant three days earlier and provided Appellant's address. At the same time, officers learned that Appellant stole a white Ford Escape in Eustace and fled. Officers then went to Appellant's address, where they found the stolen Escape. They eventually observed Appellant lying on the roof of a shed with a shotgun within arm's reach. An officer climbed a ladder to apprehend Appellant. However, when he helped Appellant to his feet, Appellant pulled away and fell off the shed. Appellant continued to resist and kept his arms underneath his waist. The officers struck Appellant to gain compliance and pulled a loaded pistol from Appellant's pocket. Appellant was later transported to the Henderson County Sheriff's Office for an interview with Texas Ranger Michael Adcock and a Henderson County investigator.

Appellant was eventually charged by indictment with attempted capital murder of a peace officer, aggravated assault with a deadly weapon against a public servant, manufacture or delivery of a controlled substance in an amount more than four grams but less than 200 grams, theft of property, evading arrest with a motor vehicle, evading arrest with a prior conviction, prohibited weapon, and two counts of unlawful possession of a firearm by a felon. Prior to trial, Appellant filed a motion to suppress his recorded interview with Ranger Adcock. Following a hearing, the trial court overruled his motion.[1]

At trial, the trial court granted the State's motions to dismiss the theft, evading arrest with a prior conviction, prohibited weapon, and one of the unlawful possession of a firearm by a felon charges. Appellant pleaded "not guilty" to the remaining charges, and the case proceeded to a jury trial. Ultimately, the jury found Appellant "guilty" and sentenced Appellant to imprisonment for ninety-nine years for attempted capital murder, twenty-five years for aggravated assault, fifty years for manufacture or delivery of a controlled substance, fifty years for unlawful possession of a firearm, and thirty years for evading arrest, along with a $10,000

---

[1] The hearing had to be held in two parts because Ranger Adcock was on assignment at the Texas border at the time of the initial hearing.

fine.  Appellant filed a motion for new trial, which was overruled by operation of law.  This appeal followed.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

In Appellant's second issue, he contends the trial court erred in failing to file written findings of fact and conclusions of law following the trial court's denial of his motion to suppress.  On May 28, 2024, this Court abated and remanded this cause to the trial court with instructions that the trial court make and file written findings of fact in accordance with Texas Code of Criminal Procedure, Article 38.22, Section 6.  The trial court filed findings of fact and conclusions of law on June 24.  Therefore, Appellant's second issue is now moot and is overruled.

## MOTION TO SUPPRESS

In his first issue, Appellant argues the trial court erred in overruling his motion to suppress.  Specifically, he contends that his statements in the custodial interview were involuntary because he was injured and mentally ill.

### Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000).  A trial court's decision to grant or deny a motion to suppress generally is reviewed under an abuse of discretion standard.  *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008).  We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor and review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor.  *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008).  At a suppression hearing, a trial court is the exclusive trier of fact and judge of the witnesses' credibility.  *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002).  Accordingly, a trial court may choose to believe or to disbelieve all or any part of a witness's testimony.  *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).  However, a trial court has no discretion in determining what the law is or applying the law to the

facts.  ***State v. Kurtz***, 152 S.W.3d 72, 81 (Tex. Crim. App. 2004).  Thus, a failure by a trial court to analyze or apply the law correctly constitutes an abuse of discretion.  ***Id.***

## Governing Law

Under Texas Code of Criminal Procedure, Article 38.21, "[a] statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion[.]" TEX. CODE CRIM. PROC. ANN. art. 38.21 (West 2023); ***Oursbourn v. State***, 259 S.W.3d 159, 169 (Tex. Crim. App. 2008).  A defendant may claim that his statement was not freely and voluntarily made and, thus, may not be used as evidence against him because, among other theories, the statement was obtained in violation of the Texas Confession Statute. *See **Oursbourn***, 259 S.W.3d at 169; *see also* TEX. CODE. CRIM. PROC. ANN. art. 38.22 §§ 2, 3 (West Supp. 2023).

Pursuant to Article 38.22, Section 3, no oral statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless (1) an electronic recording is made of the statement, (2) prior to making the statement, but during the recording, the accused is given a warning from the person to whom the statement is made that, among other things, he has the right to terminate the interview at any time, and (3) the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 § 2(a)(5), 3(a).

A confession is involuntary or coerced if the totality of the circumstances demonstrates that the confessor did not make the decision to confess of his own free will.  ***Vasquez v. State***, 179 S.W.3d 646, 655 (Tex. App.—Austin 2005), *aff'd*, 225 S.W.3d 541 (Tex. Crim. App. 2007); *see **Green v. State***, 934 S.W.2d 92, 99 (Tex. Crim. App. 1996) (citing ***Arizona v. Fulminante***, 499 U.S. 279, 285–86, 111 S. Ct. 1246, 1251–52, 113 L. Ed. 2d 302 (1991)).  We determine whether a confession was voluntary under the due process clause of the Fourteenth Amendment by examining the totality of the circumstances surrounding its acquisition.  ***Vasquez***, 179 S.W.3d at 655.

## Analysis

On appeal, Appellant contends he was coerced into making incriminating statements to obtain medical treatment.  He further claims that the Henderson County Sheriff's Office had "institutional knowledge that he was under mental health care."  As a result, Appellant asserts

that his statements during his custodial interview were not voluntary and the recording should have been suppressed.

At the suppression hearing, Appellant testified that he told officers he needed medical attention and to go to the hospital prior to the interview. He further testified:

> A. I was scared for my life. I can't breathe. I'm having trouble breathing, you know what I'm saying? Obviously, I need medical attention. I'm worried about my health.
> . . .
> A. I was hurt. I mean, I was physically hurt. I was having trouble breathing. I know my ribs are broke. I'm having neck pain. I mean, I'm scared, you know.
> Q. Did you ask for medical attention from anybody at that point from the time you were magistrated until the time you started giving a statement?
> A. Anybody I was in contact with.
> Q. I'm sorry?
> A. Everybody I was in contact with.
> Q. And were you given medical attention at any time before you gave that statement?
> A. No, sir.

Appellant claimed a jailer told him that he "wasn't getting nothing" until he confessed to buying a red Chevrolet truck from Randy Freeman. He claims he responded that he "didn't know what they were talking about, and they shut the door" to the padded cell.

During the recorded interview, Appellant did not complain that he could not breathe. He mentioned three times that he believed his ribs were broken, but he did not request medical care. On cross-examination, Appellant admitted never telling Ranger Adcock what the jailer told him. He also admitted that Adcock never expressly withheld medical attention or promised medical attention in exchange for his cooperation. Appellant acknowledged knowing what he was doing when he waived his rights and spoke with Adcock, despite the pain in his ribs.

Ranger Adcock testified that Appellant did not appear to be under duress during the interview, did not appear to be in such physical pain or discomfort that it would have affected his decision making, and did not appear to be having difficulty breathing during the interview as he did not cough, wheeze, or gasp for air. Furthermore, if Adcock believed Appellant needed urgent medical care, he would have secured medical attention. When confronted with an email stating, "brief explanation of why mental illness/mental retardation are suspected," Adcock claimed he did not have that email during his interview, and he testified that Appellant did not appear to have any intellectual disabilities.

The trial court heard and observed the testimony of Appellant and Ranger Adcock and listened to Appellant's recorded statement. At the conclusion of the hearing, the trial court stated

explicitly that it had to "make a credibility decision." Furthermore, in its findings of fact and conclusions of law, the trial court made the following pertinent findings:

> 2. While the Defendant did complain of pain in his ribs during his statement, he never requested or implied that he was in immediate need of medical attention. He never appeared, or sounded, to be in extreme pain, or in need of immediate medical treatment.

> 3. Furthermore, any pain the defendant may have been suffering, did not appear to affect his ability to understand the warnings read to him by Ranger Adcock, nor did it appear that the defendant's pain, if any, influenced his decision to waive his right to remain silent.

> 4. The Defendant testified during the hearing on the Motion to Suppress that he was told by a jailer, after his arrest, that unless he admitted to being the driver of the red pic-up truck involved in these offenses, that he would be deprived of medical attention. As the sole judge of credibility of witnesses in such a hearing, the Court finds the Defendant's testimony to not be credible.

We afford almost total deference to a trial court's ruling when questions of historical fact turn on credibility and demeanor. *Ripkowski v. State*, 61 S.W.3d 378, 381 (Tex. Crim. App. 2001) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). The record supports the trial court's finding that Appellant's testimony was not credible and that he waived his rights freely, knowingly, intelligently, and voluntarily. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22. Therefore, the trial court did not abuse its discretion in overruling Appellant's motion to suppress. We overrule Appellant's first issue.

## DISPOSITION

Having overruled Appellant's first and second issues, we ***affirm*** the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered August 21, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 21, 2024**

**NO. 12-23-00305-CR**

**JACK CODY RABURN,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

_____

Appeal from the 392nd District Court

of Henderson County, Texas (Tr.Ct.No. CR21-0418-392)

_____

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*